**Donald F. U. GOEBERT**

v.

**UNITED STATES of America.**

**Civ. A. No. 74–774.**

United States District Court,
E. D. Pennsylvania.

Jan. 28, 1976.

Ronald F. Kidd of Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty. by C. Oliver Burt, III, Philadelphia, Pa., Scott P. Crampton, Asst. Atty. Gen., Tax Div., by Thomas M. Lawler, Jr., U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

CAHN, District Judge.

Plaintiff, Donald F. U. Goebert, has brought this civil action against the United States for a tax refund. The United States had assessed the plaintiff for a one hundred percent civil penalty in the amount of $4,137.58 for failure to pay federal income taxes withheld in 1970 from employees of Americraft Products, Inc. (API). The plaintiff paid $50 on account of the assessment and

brought this suit for a refund.[1] The United States, in a partial offset against payment of the assessment, retained an overpayment of plaintiff's individual income tax for the year ending December 31, 1973, in the amount of $2,793.84. The plaintiff has amended his complaint to claim a total refund of $2,843.84. The United States has counterclaimed for $1,293.74, which is the portion of the assessment which the government claims remains unpaid.

The basis of the assessment is the authority granted in 26 U.S.C § 6672 which imposes a one hundred percent civil penalty against:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof . . . ."

Plaintiff contends he was not a responsible person of API and did not willfully cause said corporation to fail to remit the withheld funds to the United States. Upon consideration of certain stipulated facts and the evidence produced at a bench trial, I make the following:

## FINDINGS OF FACT

1. Plaintiff is Donald F. U. Goebert who resides and is domiciled at 980 East Penn Drive, West Chester, Pennsylvania, within this district.

2. The defendant and counterclaimant is the United States of America.

3. From February, 1970, to the present, plaintiff has been president and the largest shareholder of General Business Investment Corporation (GBIC) which was and is engaged in the business of making loans to business enterprises.

4. In early 1970, Nicholas Romano and William Bierlin obtained contracts to paint approximately fifty Getty Oil Company service stations in and around Philadelphia, Pennsylvania.

5. Romano and Bierlin utilized the API corporate shell as the business entity to perform the aforesaid painting contracts.

6. Thereafter Bierlin, an acquaintance of Goebert, applied to GBIC through Goebert to obtain a loan to provide working capital for API.

7. API had no funds of its own to finance the completion of the painting contract with Getty Oil Company.

8. On March 20, 1970, GBIC and API entered into a loan agreement which provided that GBIC would lend API the sum of $30,000 for 60 days at 12 percent per month interest. In addition, a placement fee of $5,000 was to be paid by API to GBIC immediately upon completion of the loan closing.

9. The loan was closed on March 23, 1970, in accordance with the terms of the loan agreement, and the placement fee was paid out of the loan proceeds.

10. The loan agreement provided that API "will cause Donald F. U. Goebert to be appointed Treasurer of the corporation and he, at his discretion, shall have complete authority to sign all checks of the corporation and to disburse the funds of the corporation. No other officer or director may disburse funds until such time as GBIC is repaid in full its loan."

11. As part of the loan transaction, certain individuals, including Romano and his wife, executed a guarantee agreement and pursuant thereto, as additional security for the loan, pledged their API stock along with executed blank stock powers.

12. Goebert, on behalf of GBIC, as part of the loan transaction and in accordance with the loan documents, received the corporate minute book and the stock transfer book of API.

13. The loan documents granted GBIC an option to purchase 25 percent of the capital stock of API for the total sum of $25. The term of the option was five years.

---

1. This procedure was approved in *Psaty v. United States*, 442 F.2d 1154 (3d Cir. 1971).

14. Following the closing of the loan transaction, a capital account for API was opened in account number 1000–0661 with the American Bank & Trust Company of Pennsylvania. The $30,000 loan proceeds were deposited in this account. The only person authorized to draw checks against that account was Goebert.

15. On May 20, 1970, API was in default of its obligation to repay GBIC the sum of $30,000.

16. API maintained an operating account with American Bank & Trust Company of Pennsylvania, account number 1000–0696. Notwithstanding the provisions of the loan agreement, until November 6, 1970, the authorized signatures of the operating account were those of Romano and Bierlin.

17. Following March 23, 1970, Goebert received oral and written reports from Romano concerning the financial condition of API.

18. On three occasions during the second quarter of 1970, itemizations of checks drawn on the operating account were sent to Goebert, which itemizations included reference to checks drawn for "cash payroll" but which did not include any reference to checks drawn to the Internal Revenue Service or a federal depository for withholding taxes.

19. API was an inactive corporation following November 1, 1970.

20. On November 4, 1970, the plaintiff signed a check drawn on the operating account of API in the amount of $2,976.53 payable to GBIC, which check was honored.

21. On November 6, 1970, Goebert filed with American Bank & Trust Company of Pennsylvania a change of signature card permitting withdrawals from the operating account on his signature only. The resolution submitted to the bank authorizing the change was signed by Goebert as president of API.

22. On May 3, 1971, the plaintiff signed a check drawn on the operating account of API in the amount of $4,000 payable to GBIC, which check was honored.

23. The checks referred to in paragraphs 20 and 22 above were the last two corporate checks issued by API and honored by the bank.

24. Romano filed Employer's Quarterly Federal Tax Returns, Form 941, for the two quarters (second and third quarters of 1970) in which the corporation transacted business. Both returns were filed late. The return for the second quarter of 1970, being due July 31, 1970, was not filed until January 8, 1971. The return for the third quarter of 1970, due October 31, 1970, was not filed until June 18, 1971.

25. For the return of the second quarter of 1970 two payments to a federal depository were made, in the total amount of $4,800. The balance due of $2,540.80 for that quarter, as shown on the return, was later submitted to the Internal Revenue Service by check drawn on API and signed by Romano but which check was dishonored on May 12, 1971, due to insufficient funds.

26. The Internal Revenue Service filed assessments against the plaintiff for the trust fund portion of the balance of the withholding and social security taxes due for the second quarter of 1970, plus all of said taxes due for the third quarter of 1970, in the total amount of $4,137.58.

27. The plaintiff is entitled to a credit of $2,843 toward the satisfaction of the assessment.

28. Plaintiff is an attorney admitted to practice before the Supreme Court of the Commonwealth of Pennsylvania.

## DISCUSSION

The Internal Revenue Code of 1954, 26 U.S.C. § 6672, imposes personal liability upon certain persons connected with a corporation who fail to discharge their obligation to remit to the Internal Revenue Service income and social security taxes withheld from employees' salaries. The liability is in the form of a penalty of 100 percent of the amount of taxes

withheld and not remitted. These taxes withheld from each employee's salary comprise a special fund in trust for the United States. 26 U.S.C. § 7501. The employer must report the amount of income and social security tax withheld from its employees on Form 941 (Employer's Quarterly Tax Return), Treas. Reg. § 31.6011(a)–1, § 31.6011(a)–4. Treasury Regulation § 31.6071(a)–1 requires this return to be filed quarterly, and it is due by the last day of the month following each calendar quarter.

The amount withheld by the employer must be deposited in a Federal Reserve Bank on a monthly basis. For the first two months of each quarter, API was required to deposit withheld taxes on or before the 15th of the following month. It was further required to file a Form 501 (Federal Tax Deposit, Withheld Income & FICA Taxes) with the remittance. Treas.Reg. § 31.6302(c)–1. The withheld amount for those months which ended a quarter were required to be paid with the quarterly return.

The question of Goebert's liability for taxes withheld by API involves the resolution of two issues. The first is whether Goebert is a responsible person within the meaning of section 6672 of the Code. If so, the second issue is whether his failure to fulfill the duty imposed upon a responsible person was willful.

There is no serious dispute that Goebert is responsible under the Internal Revenue Code. He was designated as treasurer of API by the loan agreement. In November of 1970 he assumed effective control of API as president and became the only person authorized to distribute its funds. Thus, in November of 1970 and in May of 1971, he exercised total control of API and had the power, during such period, to decide which creditors would be paid. He chose, of course, on both dates to pay GBIC. His purpose in assuming control was to utilize self help in the collection of the debt due GBIC. He argues, therefore, that he is not responsible under the statute because he was a mere creditor and not a responsible operating officer of the corporation.

■ The distinction drawn in *Werner v. United States*, 374 F.Supp. 558 (D.C. Conn.1974), is instructive. Werner was assessed as a responsible person when he allegedly caused a corporation to pay a group of creditors (one of whom was Werner) instead of the Internal Revenue Service. The court held at page 563:

"The Court does not feel that § 6672 was intended to reach one who as a bona fide creditor, and not as the power behind a puppet corporation, importunes a failing corporation to pay off its debts. Obviously creditors can and do wield considerable power over an ailing business through the threat of draconian collection measures, but so long as creditors limit such pressure tactics to inducing payment of what is owed them, and do not seek to take effective control of the debtor in order to improve the debtor's ability to pay, then the mere fact of an obligation owed to the creditor and the creditor's forceful demand for payment, together with the creditor's capacity through threat of collection to make the debtor dance to his tune, ought not to render the creditor a person responsible for the debtor's payment of taxes within the meaning of § 6672. Only he who actually calls the tune should be held accountable to the piper."

Here, Goebert took effective control of API, and, therefore, is a responsible person under § 6672.

In this district, *Datlof v. United States*, 252 F.Supp. 11 (E.D.Pa.1966), aff'd 370 F.2d 655 (3d Cir. 1966), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967), outlines certain criteria to determine who is a responsible person under § 6672. Goebert meets at least four of the criteria, including the authority: to sign checks; to decide which creditors are to be paid; to act as an officer of the corporation; and to control the financial affairs of the corporation. Therefore, we have no difficulty in concluding that Goebert was a respon-

sible person for the purpose of imposing the assessment under § 6672.

█ We turn now to the question of whether the failure of plaintiff to make a payment to the United States was willful as that term is defined. For the purposes of § 6672, willfullness is defined as:

". . . 'willfully,' as used in section 6672, supra, means a deliberate choice voluntarily, consciously and intentionally made to pay other creditors instead of paying the Government, and that it is not necessary that there be present an intent to defraud or to deprive the United States of the taxes due, nor need bad motives or wicked design be proved in order to constitute willfullness." *White v. United States,* 178 Ct.Cl. 765, 372 F.2d 513 (1967).

Plaintiff claims he has not acted willfully, because he did not actually know that withholding taxes were due. Of course, if plaintiff actually knew that withholding taxes were due to the government at a time when he withdrew funds from the corporation to pay GBIC, then plaintiff would have acted "willfully" as defined above.

Although plaintiff testified that he did not actually know withholding taxes were due, the government urges that plaintiff's position is untenable, considering the extent to which plaintiff enmeshed himself in the financial operation of API. The government emphasizes that plaintiff is an attorney who was monitoring the distribution of funds from the operating account. None of the checks were to the Internal Revenue Service or to a federal depository although some checks were drawn for "cash payroll". Finally, the government urges that plaintiff's contention be rejected because at the time of the disbursements he was the only active officer of API.

Although the government does not take the position that a negligent or accidental failure to remit funds is "willful", it does urge that willful conduct includes a reckless disregard for obvious or known risks. *Monday v. United States,* 421 F.2d 1210, 1215 (7th Cir. 1970), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970).

█ I find that plaintiff's causing payments to be made to GBIC at a time when plaintiff had taken complete control of API, after having carefully monitored all expenditures it made, constitutes willfulness, in that such acts were committed with a reckless disregard for obvious or known risks. Judge Goldberg's observation in *Gefen v. United States,* 400 F.2d 476, 483 (5th Cir. 1968), is certainly applicable to the facts in this case:

"We need not condone a game of blind mans buff in avoidance of a statutory duty."

Therefore, I make the following:

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties to and the subject matter of this litigation pursuant to 28 U.S.C. § 1340, § 1346.

2. The plaintiff is a responsible person within the meaning of 26 U.S.C. § 6672, because he assumed total control over API in November of 1970 and prior thereto was involved in monitoring the disbursements made by that corporation.

3. Plaintiff acted willfully by voluntarily, consciously, and intentionally making payment to GBIC without paying withholding taxes due the government. His acts constitute reckless disregard for obvious or known risks because of his failure to investigate or determine whether withholding taxes had been paid.

4. Judgment will be entered in favor of the defendant on both plaintiff's claim and defendant's counterclaim.