Catherine B. **BARRETT**

v.

**The UNITED STATES.**

No. 177–75.

United States Court of Claims.

July 14, 1978.

Joseph J. Lyman, Washington, D. C., attorney of record, for plaintiff.

David C. Hickman, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant. Theodore D. Peyser, Washington, D. C., of counsel.

Before DAVIS, KUNZIG and BENNETT, Judges.

## OPINION

PER CURIAM:

This case comes before the court on plaintiff's motion, filed April 13, 1978, requesting that the court adopt the recommended decision of Trial Judge Thomas J. Lydon, filed March 2, 1978, pursuant to Rule 134(h), defendant having filed no intention to except thereto and the time for so filing pursuant to the Rules of the court having

---

expired. Upon consideration thereof, without oral argument, since the court agrees with the trial judge's recommended decision, as hereinafter set forth *, it hereby affirms and adopts the same as the basis for its judgment in this case. Therefore, it is concluded that plaintiff is entitled to judgment for refund of taxes paid, together with interest as provided by law, in accordance with the trial judge's recommended decision and judgment is accordingly entered for plaintiff with the amount of recovery to be determined in further proceedings pursuant to Rule 131(c). Defendant's counterclaim is dismissed.

### OPINION OF TRIAL JUDGE

LYDON, Trial Judge:

Plaintiff in this tax refund suit seeks to recover $500, plus appropriate interest, which she paid in partial satisfaction of a 100 percent penalty of $19,870.60 assessed against her under section 6672 of the Internal Revenue Code of 1954. Defendant has counterclaimed for the balance of the assessment, plus appropriate interest and lien fees.

Section 6672 provides that any person, as defined in section 6671(b), who has a duty to collect and pay over corporate payroll taxes withheld from the wages of employees shall be liable to a penalty equal to the amount of said taxes if said person willfully fails to pay over such taxes to the government.[1] The issue to be decided is whether plaintiff was a person responsible for collecting and paying over the withheld corporate payroll taxes and whether her failure to do so was willful.

The payroll taxes in question are owed by Barrett's Transfer and Storage, Inc. (hereinafter "the company"), and cover the four quarters of 1972 and the first quarter of 1973. The company, incorporated under the laws of the District of Columbia in March 1962, was engaged in the moving, transfer and storage of household and commercial goods.[2] Plaintiff's husband, Alva J. P. Barrett (hereinafter "Barrett"), was one of the incorporators, and both he and plaintiff were listed on the articles of incorporation as directors. Barrett was the corporation's driving force from its inception until his death in August 1973. The corporation was dissolved and its certificate of incorporation revoked as of September 10, 1973.

Plaintiff married Barrett in 1939. At that time she was in her late twenties and he was 45. This childless marriage continued until Barrett's death. In the early years of her marriage, plaintiff worked for the Federal Government and resided in Washington, D. C. At some time, not disclosed by the record, she moved to Richmond, Virginia, and worked there for the Federal Government. She retired from the Federal Government on disability in 1963. Plaintiff moved from Richmond, Virginia, to the Washington, D. C., area in 1965 or 1966.

From the beginning, the company was undercapitalized and in continuous turmoil. The company was constantly striving to meet the demands of creditors, including the demands of the Internal Revenue Service (IRS) for payment of delinquent payroll withholding taxes. From 1967 and thereafter the company was behind in its payroll withholding payments to IRS. Only once, in September 1968, were these payroll withholding payments current. Utilizing a variety of procedures, e. g., temporary seizure of company assets, and liens on accounts receivable, the IRS obtained payment for company payroll withholding taxes for the periods prior to 1972.

Barrett ran the company with an iron hand. He appointed officers at will, with-

---

* Whereas the court adopts the trial judge's separate findings of fact, which are set forth in his report filed March 2, 1978, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

1. The obligations of the corporate employer relative to withholding employee payroll taxes are imposed by sections 3101, 3102, 3402 and 3403 of the Internal Revenue Code of 1954.

2. Prior to incorporation, the business was operated by Alva J. P. Barrett in an unincorporated form from sometime prior to 1939 until March 1962.

out going through any of the usual corporate formalities. He had the final say on hiring and firing decisions. He obtained the business for the company and he negotiated the contracts the company obtained. He ordered the supplies, scheduled the work and dealt with company creditors, including IRS. Prior to November 1966, he signed the company checks and he alone decided which creditors would be paid and when they would be paid.

It is clear on this record that the company under Barrett was mismanaged. There was a chronic shortage of ready cash to meet current expenses. The company at times issued checks which were returned for insufficient funds. The situation became so acute at one point that employees of the company refused to accept wage payments by check and instead demanded, and ultimately received, their wage payments in cash.

During the period 1965–1966, creditors of the company, as well as employees of the company, began to refuse to accept company checks signed by Barrett. It was in November 1966 that plaintiff and others were given authority by Barrett to sign checks for the company. The record strongly suggests that the lack of creditor and employee acceptability of checks signed by Barrett relative to company business was the primary reason why plaintiff and others were authorized by Barrett to sign company checks.[3] Barrett did not sign any company checks subsequent to November 1966.

Subsequent to November 1966, plaintiff signed almost all checks issued by the company. Occasionally, a second person would sign company checks because plaintiff was unavailable. Plaintiff routinely signed all checks presented to her, demurring only when she knew that the company accounts would not cover the amounts of the checks. Barrett, however, usually compelled her to sign checks over her objection by berating her publicly, threatening her, and at times beating her.[4] Defendant, in its brief, comments on these facts by speculating that they merely indicate that plaintiff's "attempt to control the [company's] finances was not completely successful." The record supports the view that these same persuasions discussed above were often applied to induce plaintiff to put more of her own money into the company. Giving due regard to the totality of the record, it is concluded that plaintiff never signed a company check without prior authorization from Barrett.

Barrett's quest for cash for company operations led him quite often to plaintiff's private wealth.[5] Prior to 1966, and thereafter as well, plaintiff, from time to time, loaned money to the company at the insistent urging of her husband. Plaintiff obtained loans on the collateral of her stocks and real estate, or sold them outright, and put the proceeds into the company. The record does not reveal the extent of these loans. Some of these loans were paid back. The record indicates that plaintiff was repaid about $15,000 in 1969. However, it is reasonable to conclude, on

3. Defendant attacks this suggestion as implausible arguing it makes no sense that a creditor would value her signature more than her husband's if in either case the check was drawn on the same account. However, such a procedure does make sense to creditors. *See Haffa v. United States,* 516 F.2d 931, 933 (7th Cir. 1975). There is no credible evidence to support defendant's "plausible explanation" that plaintiff, as a condition to providing financial assistance to the company, removed her husband's authority to sign company checks and assumed this authority to herself in order to control the finances of the company.

4. Barrett had a reputation as a domineering man with a short and violent temper which

flared frequently in his dealings with his employees and with his wife, the plaintiff herein. Plaintiff was afraid of her husband and as a result was ultimately submissive and subservient to him in all matters, including those affecting her own finances.

5. With earnings from her government job and with loans from her grandmother, plaintiff purchased real estate in the District of Columbia and Virginia and stock at various times between 1939 and 1963. She took sole title to the stock, but listed her husband and herself as joint owners of the real estate. Her husband made no contribution toward the purchase price of either the real estate or the stock.

this record, that considerable loan sums were never repaid to her. During the period here in issue, 1972–1973, the record indicates that plaintiff loaned the company $2,000, which sum was subsequently repaid by two $1,000 checks in March 1972.[6]

Many company obligations, primarily employee wages, were paid, at Barrett's insistence, out of plaintiff's private bank accounts. Barrett also attempted to use plaintiff's private bank accounts as attachment-proof repositories for company monies until plaintiff was able to stop these efforts. It was impossible, on this record, to determine the extent, if any, that company receipts were deposited in plaintiff's personal bank accounts during the period 1972–1973. If any such receipts were deposited in plaintiff's private bank accounts during this period, it is clear on this record that plaintiff was not a party to such endeavors and did all she could to block such activities.[7]

Plaintiff's basic function as far as company activities were concerned was to sign company checks at the direction of Barrett. Plaintiff had nothing to do with the make-up of the payroll, nor was she responsible for the preparation of any of the various federal tax forms the company was required to file. She was not responsible for, nor a participant in, the company's general office work. She would pick up company mail at the post office box and would deposit company checks at the bank, but these activities were not company obligations, but rather chores she accepted because they gave her something to do. She usually stayed at home, but occasionally went to the company office. Barrett did not appreciate her presence at the office. Barrett kept a close check on plaintiff in all matters pertaining to any participation by her in company matters. He tried to conceal from her information about the company.

Plaintiff often discussed with Barrett the need for paying IRS the withheld payroll taxes. She was aware of the company's past experiences with the IRS. On those occasions, Barrett refused to authorize the payment of those taxes, assuring plaintiff that he would take care of the matter.

The record as a whole preponderates in favor of a finding that plaintiff did not have the authority to decide which creditors, including IRS and herself, would be paid by the company and which would not be paid.

The question of who is a "responsible person" liable for a penalty assessment under section 6672 is a recurring one that has produced much litigation. It is essentially a factual inquiry. Generally, such a person is one "with ultimate authority over expenditure of funds since such a person can fairly be said to be responsible for the corporation's failure to pay over its taxes," or, more explicitly, one who has "authority to direct payment of creditors." *White v. United States,* 372 F.2d 513, 517, 178 Ct.Cl. 765, 772 (1967); *see Bolding v. United States,* 565 F.2d 663, 215 Ct.Cl. 148 (1977); *Bauer v. United States,* 543 F.2d 142, 211 Ct.Cl. 276 (1976); *see also Bernardi v. United States,* 74–1 USTC ¶ 9170 (N.D.Ill.1973), *aff'd,* 507 F.2d 682 (7th Cir. 1974), *cert.*

---

**6.** Defendant emphasizes the fact that plaintiff signed both of these $1,000 company checks which were payable to her. Defendant suggests that if plaintiff could sign checks repaying loans she made to the company, surely she could sign checks making payment on the payroll taxes due IRS. However, plaintiff testified that she signed these two checks, as she signed all company checks, only after Barrett authorized her to do so. Presumably Barrett would not allow her to write any other checks in repayment of the remaining large sums due her as a result of other loans she made to the company. The more reasonable conclusion to draw is that plaintiff would have gladly signed checks making payment on the payroll taxes

due IRS if Barrett had authorized her to do so. Plaintiff did not believe she had authority to sign any check without authorization from Barrett.

**7.** From August 9, 1972, to November 27, 1972, the company did not have an account at any bank. The record does not reveal what was done with corporate receipts received during this period. To the extent that company receipts may have been deposited in plaintiff's personal bank accounts during this period, they were so deposited by Barrett or at his direction. The record is clear that plaintiff was opposed to this procedure under any circumstance.

*denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975).

A reading of the above-cited cases illustrates the various factors which the courts take into consideration in deciding who is a "responsible person" under section 6672. One of these factors, relied on by defendant, is plaintiff's authority to sign company checks. In given circumstances, this factor has been cited in support of finding a person responsible for collecting and paying over corporate withholding taxes. *See Flan v. United States,* 326 F.2d 356 (7th Cir. 1964); *see also Burack v. United States,* 461 F.2d 1282, 198 Ct.Cl. 855 (1972). In *Burack,* the court stated, "Authority to cosign in effect gives one the authority to decide which creditors should be paid." (461 F.2d at 1291, 198 Ct.Cl. at 869.) Defendant emphasizes this sentence from the *Burack* decision. However, in the *Burack* and *Flan* cases, other circumstances set forth in those decisions placed the check-signing authority in context and disclosed that the responsible persons in those cases possessed authority over corporate affairs that extended beyond mere check-signing authority. Case law discloses that authority to sign checks, without more, is a weak pillar on which to rest a liability determination that a person is properly subject to a 100 percent penalty under section 6672.

In the same vein, examination of the cases cited above reveals other factors which the courts have found significant in reaching a "responsible person" determination. Those factors are absent relative to plaintiff's connection with the company.

Plaintiff had no responsibility for making up the payroll. She had no authority over payment of the salaries of company employees. Creditors did not ask for her when inquiring about being paid. She had no responsibility for the preparation of tax returns for the company, nor did she sign any such returns. Plaintiff did not negotiate company contracts, bill customers, order supplies or hire and fire employees.[8]

In *White v. United States, supra,* 372 F.2d at 516, 178 Ct.Cl. at 771, this court noted that "a responsible person is most frequently defined as a person who has 'the final word as to what bills or creditors should or should not be paid and when.' * * * *" I am persuaded, on this record, that Barrett, not plaintiff, had "the final word" in these circumstances. It is established that plaintiff did sign most of the company checks during the period 1972–1973. It is also established that she never signed any company checks unless authorized by Barrett. Under these conditions, the mere signing of checks by plaintiff is not evidence of company fiscal authority, especially where the checks are prepared by and/or demanded by others in the company and routinely, for the most part, executed by plaintiff. The fact that plaintiff signed company checks is not in and of itself sufficient to justify liability under section 6672. *United States v. Lumetta,* 73–1 USTC ¶ 9386 (E.D.Mo.1973); *Montana v. United States,* 76–1 USTC ¶ 9145 (D.Neb.1975).

Defendant couples with plaintiff's authority to sign company checks the fact that she was a creditor of the company,[9]

---

**8.** It seems clear from the record that during the period 1972–1973 plaintiff was not an officer or director of the company; nor was she an employee or stockholder of the company. Defendant argues she should be treated as a *de facto* officer of the company. Such a determination is not necessary for a decision in this case. One not an officer, director, employee or shareholder is not immune from liability under section 6672 solely because of lack of formal connection with the company. *See Haffa v. United States, supra,* 516 F.2d at 935–36. *Cf. Mueller v. Nixon,* 470 F.2d 1348, 1349–50 (6th Cir. 1972), *cert. denied,* 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1001 (1973). *See also Walker v. United States,* 21 A.F.T.R.2d 1398 (W.D.

Okla.1968). The test is whether the person, regardless of company status, is in a position to exercise full authority over the financial affairs of the corporation, especially in the allocation of funds to creditors.

**9.** Defendant relies on *Walker v. United States, supra,* where a corporate creditor with authority to sign company checks was found to be a "responsible person." However, Walker was also found to be in control of the affairs of the company and had ultimate authority to select which creditors would be paid. Plaintiff had no such authority in this case. *See Cellura v. United States,* 245 F.Supp. 379 (N.D.Ohio 1965).

and the fact that she was repaid, during the period in question, a loan she made to the company.[10] However, neither of these facts is sufficient to overcome the crucial finding that plaintiff lacked authority to determine what creditors, including IRS and herself, should be paid and when they should be paid.

The record in this case discloses that plaintiff was dominated by her husband. She felt powerless to write any company checks without her husband's authorization. In fact, she only wrote company checks when her husband so directed. Family relationships, especially where one member of the family is domineering and assertive, is a factor worthy of consideration in determining whether one is a "responsible person" under section 6672. *See McCullough v. United States,* 442 F.2d 1011, 1012 (1971), 462 F.2d 588, 590 (5th Cir. 1972); *Howard v. United States,* 76–2 USTC ¶ 9782 (N.D.Ohio 1976); *United States v. Smilen,* 224 F.Supp. 233, 234 (E.D.N.Y.1963). In each of the above-cited cases, the signers of corporate checks, children of dominant fathers, had more independent authority relative to company affairs than did plaintiff herein, and yet were found not to be "responsible persons" under section 6672. Under the circumstances of this case, it is my opinion that plaintiff is not a "responsible person" under section 6672 and thus not liable for any 100 percent penalty assessment.

Assuming *arguendo,* that plaintiff be deemed to be a "responsible person," it would still be necessary to find that she was "willful" in her failure to pay the taxes in issue. *Burack v. United States, supra,* 461 F.2d at 1285, 198 Ct.Cl. at 859. In context, "willful" has been defined as "a deliberate choice voluntarily, consciously and intentionally made to pay other creditors instead of paying the Government * * * ." *White v. United States, supra,* 372 F.2d at 521, 178 Ct.Cl. at 778. It requires little discussion to find that a woman dominated by her husband, who never signed a company check unless authorized by her husband, does not act willfully in failing to pay over withheld taxes. Plaintiff tried to get her husband to pay the taxes in issue but was unsuccessful.[11]

Defendant has failed to rebut the presumption created by this record that Barrett, the founder, sole stockholder, president and motivating force in the company at all times, had the sole responsibility for the payment of the corporate taxes here in issue. *See McCarty v. United States,* 437 F.2d 961, 967–68, 194 Ct.Cl. 42, 55 (1971). Plaintiff, it must be concluded, had no such authority. Accordingly, she is entitled to recover on her refund suit. Defendant's counterclaim must be dismissed.

## CONCLUSION OF LAW

Upon the findings of fact and foregoing opinion, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to judgment for refund of taxes paid, together with appropriate interest as provided by law. Defendant's counterclaim is dismissed. The full amount of recovery will be determined in further proceedings pursuant to Rule 131(c).

10. The loan was repaid in March 1972 before the 1972 first quarter employer return was due for filing with IRS. As indicated previously, Barrett authorized her to sign these loan repayment checks (*see* n. 6 and text, *supra* ).

11. Defendant emphasizes that corporate funds were available during the period 1972–1973 to pay the assessments now in issue. Defendant also stresses plaintiff's testimony that her husband only told her "who to give them [checks] to, not who not to give them [checks] to." However, the point is that Barrett refused to authorize payment to the IRS during this period. While plaintiff was authorized to sign company checks, she could only sign those checks which were authorized by Barrett, her husband. Given Barrett's violent temper and his persuasive methods (*see* n. 4 and text, *supra* ), plaintiff had no deliberate choice to voluntarily sign checks making payment to IRS. There is no evidence in this case as to whether, on dissolution of the corporation in September 1973, there were company assets available from which IRS could have collected the delinquent withholding taxes in question instead of proceeding against plaintiff in March 1974. *See McCarty v. United States,* 437 F.2d 961, 194 Ct.Cl. 42 (1971).