**Linda L. SADOWSKI**

v.

**UNITED STATES of America**

v.

**Conrad A. SADOWSKI**
**Third-party Defendant.**

Civ. A. No. 86–5481.

United States District Court,
E.D. Pennsylvania.

May 10, 1988.

Robert D. Katzenmayer, Reading, Pa., for plaintiff.

J. Michael Morrissey, Wyomissing, Pa., for defendant.

### FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW, AND ORDER

HUYETT, District Judge.

Plaintiff, Linda L. Sadowski (now Linda Kemmerer), brought this civil action against the United States of America for a tax refund. The United States had assessed the plaintiff for a one hundred percent civil penalty pursuant to 26 U.S.C. § 6672 for failure to pay federal income taxes withheld during the third quarter of 1980 through the third quarter of 1982 from employees of Sadowski Plumbing, Inc. (Sadowski Plumbing). The United States has counterclaimed for the amount still owing on the assessment and has filed a third-party complaint against Conrad A. Sadowski. Section 6672 imposes a one hundred percent civil penalty against:

"Any person required to collect, truthfully account for, and pay over any tax im-

posed by this title who willfully fails to collect such tax, or truthfully account for and payover such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof...."

Plaintiff contends she was not a responsible person of Sadowski Plumbing and, therefore, should not be held liable for the one hundred percent penalty under section 6672. Following a non-jury trial on December 23, 1987, I make the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## FINDINGS OF FACT

1. Plaintiff Linda L. Sadowski resides and is domiciled at 1346–F West Wyomissing Boulevard, West Lawn, Pennsylvania within this district.

2. The defendant and counterclaimant is the United States of America.

3. Third-party defendant Conrad A. Sadowski resides and is domiciled at 47 West Wilson Street, Wernersville, Pennsylvania within this district.

4. Plaintiff Linda L. Sadowski and third-party defendant Conrad A. Sadowski were married in June of 1967, separated in December of 1982, and subsequently divorced in December of 1983. Stipulated Facts, Final Pretrial Order, para. 2(a).[1]

5. Conrad A. Sadowski was self-employed as a plumbing contractor from late 1975 until 1983. Third-party defendant operated his plumbing business as a sole proprietorship from 1975 until January of 1980. Stipulated Facts, Final Pretrial Order, para. 2(b).

6. From January 1980 through December 31, 1982, Conrad Sadowski operated the business as a Pennsylvania corporation under the name of "Sadowski Plumbing and Heating Co." Stipulated Facts, Final Pretrial Order, para. 2(c).

7. Conrad Sadowski was the sole shareholder, director, officer, and president of Sadowski Plumbing. Stipulated Facts, Final Pretrial Order, para. 2(d).

8. Conrad Sadowski was an authorized signer on the corporate checking account maintained at American Bank and Trust Company. Third-party Sadowski signed checks on this account. Stipulated Facts, Final Pretrial Order, para. 2(d). *See, e.g.,* Government Exhibit 12(A)(B)(C).

9. Plaintiff at no time was a salaried employee of Sadowski Plumbing, but did perform work for the corporation.[2] Stipulated Facts, Final Pretrial Order, para. 2(g). Further, plaintiff at no time was an officer of the corporation.[3]

10. Plaintiff was an authorized signer on the corporate checking account maintained at American Bank and Trust Company. Third-party Defendant Exhibit 1. Plaintiff signed checks drawn on the corporate checking account. *See, e.g.,* Government Exhibits 2(A)(B)(C). Plaintiff also made deposits to, but did not make withdrawals from, the account.

11. Sadowski Plumbing was operated from the Sadowski's home. The corporate "office" was maintained on the second floor of the Sadowski home in a sewing

---

1. The parties, instead of filing proposed findings of fact and conclusions of law, statement of stipulated facts, and pretrial memoranda as required by my order dated October 5, 1987, filed a proposed final pretrial order. This proposed final pretrial order included information similar to that which would be contained in proposed findings of fact and conclusions of law and pretrial memoranda. However, the parties did not include stipulated facts in their proposed final pretrial order. Therefore, certain facts from the proposed final pretrial order were read into the record as uncontested. I will reference these uncontested facts as "stipulated facts" with their final pretrial order paragraph citation.

2. Plaintiff was supported by her husband with funds earned by the corporation during the period in question.

3. On cross-examination plaintiff was asked about third-party defendant's exhibit 1 which is a photocopy of the Sadowski Plumbing corporate banking card. This card is signed by Conrad and Linda Sadowski and authorizes them both to sign checks on the corporate account. An unknown individual, not plaintiff Sadowski, inserted the word "Secretary" after plaintiff Sadowski's name. Third-party defendant stated that plaintiff was not an officer of the corporation and I am satisfied that she was not.

room equipped with a typewriter and filing cabinet for corporate use. A separate telephone line was maintained for the corporation.

12. Corporate records were kept both at the office of the accountant hired by Sadowski Plumbing and the home office. Corporate cancelled checks were kept on top of the filing cabinet in the sewing room.

13. The corporation had four employees. Conrad Sadowski supervised these employees. All hiring and firing of employees was done by Conrad Sadowski. Linda Sadowski was not authorized to, nor did she, hire, fire, or supervise employees.

14. Plaintiff Linda Sadowski testified at the December 23, 1987 trial. I found her testimony to be candid and frank, and that she was a credible witness.

15. Plaintiff Sadowski began performing tasks for her husband's business in 1975. Plaintiff Sadowski worked part-time as a receptionist from 1975 until 1977 when third-party Sadowski asked her to leave her employment to help him with his plumbing business.[4] Third-party defendant needed plaintiff's assistance because he was out most of the day performing plumbing jobs.

16. Plaintiff performed routine tasks for the corporation. Plaintiff's tasks included typing, answering the phone, picking up the mail, writing out checks, and computing the payroll.

17. Plaintiff's typing duties consisted of typing job estimates and customer bills given to her by third-party defendant Sadowski. Plaintiff did not initiate any bills on behalf of the corporation; nor did she estimate plumbing jobs herself.

18. Plaintiff wrote corporate checks to pay various creditors at the instruction of her ex-husband, third-party defendant Sadowski. Third-party defendant gave plaintiff creditors' bills approximately once a week and instructed her as to the amount to pay the creditors. Plaintiff Sadowski did not initiate the payment of corporate creditors; rather she paid them as instructed by her ex-husband. Plaintiff also issued blank checks to employees for plumbing materials when instructed to do so by third-party defendant Sadowski.

19. When writing these checks, plaintiff would also post each amount in the corporate checkbook.

20. Plaintiff occasionally picked up mail at the post office. On these occasions, plaintiff would look through the mail and place it on the kitchen table for her then husband's review.

21. Plaintiff also delivered the corporate checkbook to the corporation's accountant, Charles Galeo, four times a year when the quarterly taxes were due. Her job in this regard was that of an errand girl; she dropped off the checkbook and other corporate information, and picked up the finished tax returns which she then gave to her ex-husband. Plaintiff did not discuss the business in any detail with the accountant and did not sign corporate tax returns.

22. Plaintiff answered the corporate phone and spoke to creditors when they called. Plaintiff took messages for her ex-husband, but did not handle the subjects of the phone calls.

23. The Sadowski Plumbing employees were paid weekly. Third-party defendant instructed plaintiff as to the number of hours worked by each employee and the hourly rate. Plaintiff computed the gross wage, taxes to be withheld, and the resulting net wage. Plaintiff would then write out the employee pay checks.

24. Plaintiff did not have scheduled hours or days during which she was obligated to perform corporate work. Plaintiff worked up to four hours per day performing corporate tasks.

25. Plaintiff ceased performing most of these corporate tasks in January of 1982

---

**4.** On cross-examination, third-party defendant's attorney introduced plaintiff's deposition testimony that she left her outside employment to "run" her husband's business. At trial, plaintiff explained that she simply meant that she left her former job to help her husband with office work. I am satisfied that no greater significance should be placed on plaintiff's use of the word "run."

when she entered beauty school. Plaintiff attended school five days per week from 8:30 a.m. to 5:00 p.m. The class ended in November 1983. Plaintiff did continue to sign corporate checks while attending school. Government Exhibit 3(c)–11.

26. The Sadowski's marital problems began in March of 1981 culminating in their December 1982 separation and December 1983 divorce.

27. Charles Galeo, Sadowski Plumbing's accountant, testified at the December 23, 1987 trial. I found his testimony to be candid and frank and that he was a credible witness.

28. At a preliminary meeting held before Sadowski Plumbing's incorporation, plaintiff, third-party defendant and accountant Galeo discussed the roles each would assume on behalf of Sadowski Plumbing.

29. Mr. Galeo testified that they decided that plaintiff Sadowski would perform routine general office duties. According to Galeo, plaintiff was to answer the phones, write-up and pay bills, and submit the checkbook and cancelled checks to him quarterly.

30. Galeo's engagement by Sadowski Plumbing was a limited one. He never performed a full audit of the corporation.

31. Galeo testified that his duties included preparing tax returns and "doing writeup work" *i.e.* converting the cash basis documents and account records submitted by the client at the end of the year to accrual basis records.

32. Galeo testified that plaintiff Sadowski delivered corporate records to him. He testified further that he returned the completed tax forms to plaintiff Sadowski with a sheet instructing the Sadowskis' to mail the form. *See* Third-party Defendant Exhibit 2.

33. Galeo testified that a number of outstanding checks existed when he reconciled the corporate books, but that he did not know to whom or for what amount these checks were written. He also stated that he mentioned the problem to both plaintiff Sadowski and third-party defendant Sadowski, but never performed an audit.

34. Third-party defendant Sadowski terminated accountant Galeo's engagement in 1981 and transferred the Sadowski Plumbing account to another accounting firm.

35. Third-party defendant Sadowski also testified at the December 23, 1987 trial.

36. Third-party defendant testified that plaintiff Sadowski was responsible for the "paperwork" of the corporation. Third-party defendant explained that plaintiff's duties were to "keep the books" and to "get things ready for payment."

37. Third-party defendant testified further that he directed plaintiff to pay taxes and suppliers. According to Conrad Sadowski, he gave plaintiff the general authority to pay creditors, but did not check to see whether plaintiff was paying the suppliers and taxes because he "trusted her."

38. According to third-party defendant Sadowski, plaintiff retrieved the mail during the week and he retrieved the mail on weekends. Third-party defendant corroborated plaintiff's testimony that she placed the mail in the kitchen so that Conrad could review and attend to the mail.

39. Third-party defendant Sadowski testified that the corporation received a four thousand dollar check from General Battery in 1982 and instructed Linda to pay the taxes owed by the corporation with the proceeds of the check. Third-party defendant also stated that he never saw such a check, but that he was told by a General Battery purchasing agent that the check would be sent. On cross-examination third-party defendant stated that this check had been deposited in the corporate account and that he saw the cancelled check. Third-party defendant Sadowski also mentioned an $11,000 check which he claimed was received by the corporation from the Perskie Corporation. Third-party defendant Sadowski never saw this check and did not know if the check had ever been deposited.

40. Third-party defendant testified that in 1982 he found fifty-seven envelopes addressed to the IRS and other creditors along with check stubs in the second floor office, and when he asked plaintiff about the envelopes he was told that the envelopes were "none of your business."

41. Third-party defendant testified further that he did not know the amount or dates of any of the checks in these envelopes, that he told accountant Galeo about these checks and brought them to accountant Galeo's office. On cross-examination, third party defendant admitted that these checks could have been written recently and were waiting to be mailed.

42. Accountant Galeo testified that he never saw the fifty-seven envelopes mentioned by third-party defendant Sadowski and never examined the corporate books concerning these fifty-seven envelopes.

43. According to third-party defendant, he signed the tax returns and relied on plaintiff to mail checks to the IRS and to other creditors. He stated that he did not know if the IRS was paid, but knew other creditors were paid.

44. Nelson J. Nagel testified at the December 23, 1987 trial, and I found him to be a credible witness and his testimony to be frank and candid.

45. Nagel was employed as an Internal Revenue Service officer and was acquainted with and responsible for the investigation of the nonpayment of employee withholding tax by Sadowski Plumbing.

46. On November 7, 1983, the District Director of the Internal Revenue Service, Philadelphia District, by his Notice of and Demand for Payment, assessed against plaintiff the balance of $11,788.20, representing the application of the one hundred percent penalty imposed pursuant to Internal Revenue Code section 6672. The Notice and Demand was in reference to withholding taxes assessed against and allegedly unpaid by Sadowski Plumbing for tax periods commencing as of the third quarter of 1980 through the third quarter of 1982.

Stipulated Facts, Final Pretrial Order, para. 2(i).

47. On November 7, 1983, an assessment identical to the aforesaid assessment was made against the third-party defendant, Conrad A. Sadowski. Stipulated Facts, Final Pretrial Order, para. 2(j).

48. On June 29, 1984, the District Director of the Internal Revenue Service, Philadelphia District, applied the sum of $731.60 representing plaintiff's federal income tax refund for the tax period ending December 31, 1983 to the alleged liability of plaintiff asserted in the Notice and Demand. Stipulated Facts, Final Pretrial Order, para. 2(k).

49. On April 24, 1985, the District Director of the Internal Revenue Service, Philadelphia District, seized and sold real and personal property belonging to plaintiff and third-party defendant and applied the gross proceeds therefrom in the amount of $5,000.00 to each alleged liability of plaintiff and third-party defendant as asserted in the Notice and Demand. Stipulated Facts, Final Pretrial Order, para. 2(e).

50. On May 10, 1985, plaintiff paid to the District Director of the Internal Revenue Service, Philadelphia District, the sum of $3,380.30.[5]

51. The balance as of April 24, 1985 remaining due from third-party defendant Sadowski is $6,861.83 plus interest. Government Exhibit 18. The balance allegedly due from plaintiff Sadowski equals $2,676.30, plus interest.

52. On October 4, 1985 plaintiff filed with the District Director of the Internal Revenue Service, Philadelphia District, a claim for a refund of the withholding taxes paid by her, plus interest, with respect to all applicable calendar quarters of Sadowski Plumbing. On September 16, 1986, plaintiff brought this suit seeking a refund in the amount of $9,111.90.

## DISCUSSION

Internal Revenue Code § 3102(a) requires employees to deduct and withhold

---

5. Plaintiff initially alleged that she had paid the District Director $4,077.47. Final Pretrial Order, para. 3(n). At trial, the parties stipulated that the correct figure is $3,380.30.

federal insurance contributions and taxes from wages paid by the employer to its employees. 26 U.S.C. § 3102(a). The amount of the tax withheld by an employer is to be held in a special fund in trust for the United States. 26 U.S.C. § 7501(a). The employer is required to file quarterly reports of taxes withheld and to make federal tax deposits with commercial banks designated as depositories in accordance with regulations promulgated pursuant to the Internal Revenue Code.

The Internal Revenue Code of 1954, 26 U.S.C. § 6672, imposes personal liability upon certain persons connected with a corporation who fail to discharge their obligation to remit to the Internal Revenue Service income and social security taxes withheld from their employees' salaries. The liability is in the form of a penalty of one hundred percent of the amount of taxes withheld and not remitted.

Section 6672 imposes this penalty on any person who: 1. was required to "collect, truthfully account for and payover employment taxes," and 2. has "willfully failed to do so." Section 6672 applies and the one hundred percent penalty extends to "an officer or employee of the corporation who ... is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b).

■ The question of Linda and Conrad Sadowski's liability for taxes withheld by Sadowski Plumbing during the third quarter of 1980 through the third quarter of 1982 involves the resolution of two issues. The first is whether either plaintiff, third-party defendant, or both, are responsible persons within the meaning of Section 6672. If so, the second issue is whether the failure to fulfill the duty imposed upon the responsible person was willful. The government establishes its *prima facie* case on the counterclaim and third-party claim by offering into evidence certified copies of the Commissioner's assessment. *Psaty v. United States*, 442 F.2d 1154, 1159 (3d Cir.1971). Therefore, where, as here, the government offers into evidence the certification of the Commissioner's assessment, the taxpayer bears the burden of proving by a preponderance of the evidence that he was not a responsible person or that he did not willfully fail to fulfill his obligation to payover the withholding tax to the Internal Revenue Service. *Id.* at 1160. *See* Government Exhibits 17 and 18.

■ As previously stated, plaintiff can be held liable for the one hundred personal penalty only if she was under a duty to collect, account for, and payover employment taxes and willfully failed to do so. *See Slodov v. United States*, 436 U.S. 238, 245, 98 S.Ct. 1778, 1784, 56 L.Ed.2d 251 (1978). It is well settled that more than one individual may be a responsible person under section 6672. *Hartman v. United States*, 538 F.2d 1336, 1340 (8th Cir.1976); *Datlof v. United States*, 252 F.Supp. 11, 33 (E.D.Pa.1966). The Internal Revenue Service may assess more than one person for one tax liability, but may collect the full one hundred percent penalty only once. Liability for the § 6672 penalty between responsible persons is joint and several. *Datlof*, 252 F.Supp. at 33.

■ An individual is a responsible person when he has the "final word" as to what bills should or should not be paid, and when. *Adams v. United States*, 504 F.2d 73, 75 (7th Cir.1974). *See also Hewitt v. United States*, 377 F.2d 921, 924 (5th Cir. 1967). "Final" does not mean exclusive control over corporate finances; rather "final" means "significant control." *Id.* Put another way, responsibility, for purposes of section 6672, means "a control of finances within the employer corporation: the power to control the decision making process by which the employer corporation allocates funds to other creditors in preference of its withholding obligations." *Haffa v. United States*, 516 F.2d 931, 936 (7th Cir.1975); *United States v. Goebert*, 412 F.Supp. 356, 360 (E.D.Pa.1976) (a responsible person is one who has the "power ... to decide which creditors should be paid.")

The test for determining responsibility under § 6672 is a functional one, "focusing upon the degree of influence and control which the person exercised over the financial affairs of the corporation, specifically, disbursement of funds and the priority of

payments to creditors." *Gephart v. United States*, 818 F.2d 469, 473 (6th Cir.1987). Further, to be held liable under § 6672, one need not occupy a formal corporate office or have traditional employee status. Formal employment is not the test of liability under § 6672. *Adams*, 504 F.2d at 75 (corporate lender and its employee held liable for nonpayment of withholding tax because the lender had "assumed substantial control over the critical functions of the debtor corporation.")

The Government argues that plaintiff is a "responsible" person because she had the authority to and did sign corporate checks to creditors. According to the government, the authority to sign checks is sufficient to impose liability on plaintiff because "a person with authority to sign a check has the authority to decide which creditors should be paid.... Authority to payover trust fund monies means the effective power to pay...." Final Pretrial Order at 14.

In certain circumstances, a plaintiff's authority to sign corporate checks has been cited as a factor in support of finding a person responsible for collecting and paying over taxes. *See Gephart v. United States*, 818 F.2d 469 (6th Cir.1987); *Roth v. United States*, 779 F.2d 1567 (11th Cir. 1986); *Howard v. United States*, 711 F.2d 729 (5th Cir.1983); *Bolding v. United States*, 565 F.2d 663, 215 Ct.Cl. 148 (1977); *Burack v. United States*, 461 F.2d 1282, 198 Ct.Cl. 855 (1972).

In *Burack*, the court stated "[a]uthority to sign checks gives one the authority to decide which creditors should be paid." *Burack*, 461 F.2d at 1291. However, circumstances present in those decisions that are not present here placed the check signing authority in context and disclosed that the responsible persons in those cases possessed authority over corporate affairs beyond mere check signing authority. For example, in *Howard*, the responsible person in question was a shareholder, director, and executive vice-president of the corporation who ran the corporations day-to-day affairs. *Howard*, 711 F.2d at 734. *See also, Gephart*, 818 F.2d at 474 (general manager of a computer company that had

the authority to decide which creditors should be paid found to be a responsible person); *Roth*, 779 F.2d at 1575 (executive vice-president of a small corporation who hired employees and managed the day-to-day affairs of the company held liable for the one hundred percent penalty); *Bolding*, 565 F.2d at 670 (vice-president of finance, secretary, and treasurer who received and signed check requests, dealt with creditors seeking payment on past due bills, and exercised authority over disbursements and payment of creditors held liable under section 6672.). "Case law discloses that authority to sign checks, without more, is a weak pillar on which to rest a liability determination that a person is properly subject to a one hundred percent penalty under § 6672." *Barrett v. United States*, 580 F.2d 449, 217 Ct.Cl. 617 (1978) (wife of founder of small corporation held not to be a responsible person where she signed corporate checks at the direction of her husband who ran the corporation).

Case law reveals other factors weighed by courts when determining responsibility under § 6672. These factors include: 1. contents of the corporate by-laws; 2. the identity of the individual who signed the employer's tax return; 3. the authority to decide which creditors will be paid; 4. the identity of the officers, directors, and principal shareholders of the firm; 5. the identity of the individuals who hired and fired employees, and 6. the identity of the individual who controlled the financial affairs of the firm. *Datlof*, 252 F.Supp. at 32–33. *See also Goebert*, 412 F.Supp. at 360. It is clear from the record that plaintiff was not a director, officer, stockholder, or employee of the company. It is also undisputed that plaintiff did not hire or fire employees and did not sign any tax returns on behalf of Sadowski Plumbing.

The record shows that plaintiff performed routine office work such as typing, answering the phone, and retrieving mail. Plaintiff was directed in these activities by her husband who instructed her as to which creditors to pay and when to pay them. Plaintiff had no scheduled hours or days during which time she was required to perform her office duties, and attended

school full time from January 1982 to November 1983. The record establishes that plaintiff, far from controlling the financial affairs of Sadowski Plumbing, was merely acting the role of a helpful spouse, aiding her husband by performing routine office work at his direction. That plaintiff prepared and signed checks at her husband's bidding is not sufficient under the facts of this case to justify liability under section 6672. *See Geiger v. United States*, 583 F.Supp. 1166 (D.Az.1984) (an employee of a roofing contractor who was authorized and did sign corporate checks but did so only at the direction of the company's president was not a responsible person for purposes of section 6672); *Barrett*, 580 F.2d 449.

In arriving at my conclusion that plaintiff was not a responsible person, I was required to make certain credibility determinations. Specifically, I was required to determine whether third-party defendant or plaintiff was more credible. I have resolved credibility in favor of plaintiff. I found plaintiff to be honest and straightforward in her testimony. For example, plaintiff admitted that she knew that the corporation did not have sufficient funds to pay all creditors. She certainly could have evaded this question thus simplifying the record in her favor.

Further, when confronted with her deposition testimony that she spent four hours a day performing corporate tasks, she adhered to her trial testimony that she was not sure how much time she spent on corporate business. She could have agreed with her deposition testimony on this point without lessening her likelihood of success. Moreover, plaintiff's testimony that she performed routine office work at the direction of her ex-husband was corroborated by accountant Galeo's testimony that she was to perform administrative work and act as an errand girl in delivering documents to and retrieving documents from him.[6]

Third-party defendant's testimony, on the other hand, was, at times, vague and inconsistent. For example, he testified that in 1982 he found fifty-seven envelopes addressed to creditors with check stubs in the second floor office. However, plaintiff did not know the amount or date of any checks contained in the envelopes and admitted that these checks could have been written the same day. Further, third-party defendant testified on direct examination that the corporation received a $4,000 check from General Battery with which he directed plaintiff to pay the withholding taxes. He also testified that he never saw the check but was told by a General Battery purchasing agent that the check was sent to Sadowski Plumbing. However, on cross-examination, third-party defendant stated that the check was deposited in the corporate bank account and that he saw the cancelled check. Finally, third-party defendant's testimony that he told accountant Galeo about the checks and thought he took them to Galeo is inconsistent with the accountant's testimony that he never saw these checks. I found plaintiff's testimony credible and much of third-party defendant's testimony unworthy of belief and found the facts accordingly.

There is no dispute that third-party defendant Sadowski was a responsible person for purposes of § 6672. At oral argument, third-party defendant's attorney conceded that third-party defendant was responsible for collecting and paying over withholding taxes. Moreover, third-party defendant was founder, sole shareholder, and president of Sadowski Plumbing. He supervised the corporation's employees and was solely responsible for hiring and firing employees. Further, he drafted job estimates, customer bills and dealt with creditors and customers of the corporation. Third-party defendant was a signatory to the corporate checking account and the sole signatory of the corporate tax returns.

---

6. Plaintiff testified that she never saw an instruction sheet attached to tax returns given to her by the accountant, while the accountant testified that he attached an instruction sheet to all such returns. Instead of casting doubt on plaintiff's testimony, the accountant's statement

that he attached an instruction sheet to completed tax returns serves to bolster her testimony. That plaintiff never saw or read such an instruction sheet is consistent with her testimony that she merely picked up completed tax returns and left them for her ex-husband's signature.

More importantly, third-party defendant controlled the financial affairs of the corporation and directed plaintiff as to which creditors should be paid and when. In short, third-party defendant had the "final word" as to the allocation of funds to other creditors in preference of his withholding obligations.

■ Although third-party defendant is a responsible person for purposes of § 6672, he cannot be held liable for the one hundred percent penalty unless he willfully preferred other creditors over the Internal Revenue Service. Willfulness under § 6672 requires only that "the failure to pay result from a voluntary, conscious and intentional payment to others before the government. It is not necessary that there be present an intent to defraud or to deprive the United States of taxes due, nor need bad motives or wicked design be proved in order to constitute willfulness." *Bolding,* 565 F.2d at 672 (citation omitted); *see also Goebert,* 412 F.Supp. at 361. A considered decision not to fulfill one's obligations to pay taxes owed, evidenced by payments to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness. *Howard,* 711 F.2d at 736.

More than mere negligence is required for willfulness; a person is not willful if as a result of negligence he is unaware of the default in withholding taxes. *Gephart,* 818 F.2d 469, 475 (citation omitted); *Goebert,* 412 F.Supp. at 361. However, willful conduct does include a reckless disregard for obvious or known risks. *Bolding,* 565 F.2d at 672. Further, a responsible person cannot escape his obligation to ensure that the withholding taxes are remitted to the government by delegating this responsibility to another. *Hornsby v. Internal Revenue Service,* 588 F.2d 952, 953 (5th Cir. 1979).

In this case, third-party defendant cannot be heard to say that his failure to pay or direct plaintiff to pay the withholding taxes was not willful. Third-party defendant bears the burden of proving an absence of willfulness; a burden which he has not met. Third-party defendant was the sole shareholder and president of a small plumbing business with four employees. He alone supervised these employees and dealt directly with creditors. Third-party defendant drafted all job estimates and customer bills and instructed his wife as to the hours worked by his employees and the rate at which they were to be paid. Most importantly, however, third-party defendant instructed his wife as to what creditors should be paid and when. Third-party defendant, therefore, knew what funds were coming into the corporation and what funds were leaving the corporation. In a position of such authority, and control over his business, third-party defendant could hardly have functioned without an overall view of the plumbing business' financial condition.

## CONCLUSIONS OF LAW

1. I have jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §§ 1340, 1346.

2. The plaintiff was not a responsible person during the period from the second quarter of 1980 through the third quarter of 1982 because she did not have significant control over the decision making process by which Sadowski Plumbing's funds were allocated.

3. Third-party defendant Conrad Sadowski was a responsible person within the meaning of 26 U.S.C. § 6672 because he decided which creditors of the corporation would be paid in preference over the corporation's withholding obligations.

4. Third-party defendant Conrad Sadowski acted willfully by voluntarily, consciously and intentionally paying and directing his ex-wife to pay creditors, while the corporation's withholding taxes remained unpaid. His acts constitute reckless disregard for obvious or known risks because of his failure to investigate or determine whether withholding taxes had been paid.

5. Judgment will be entered in favor of the plaintiff on plaintiff's claim and against defendant on defendant's counterclaim. Judgment will be entered against third-party defendant and for third-party plaintiff on the third-party claim.

## ORDER

Upon consideration of the evidence produced at the non-jury trial held before me on December 23, 1987, and for the reasons set forth in the accompanying findings of fact, discussion and conclusions of law, IT IS ORDERED that

1. Judgment is entered in favor of plaintiff and against defendant in the amount of $9,111.90, plus interest, on plaintiff's refund claim.

2. Judgment is entered in favor of plaintiff and against defendant on the defendant's counterclaim.

3. Judgment is entered in favor of third-party plaintiff and against third-party defendant in the amount of $6,861.83, plus interest.

IT IS SO ORDERED.