UNITED STATES of America, Plaintiff,

v.

Richard A. DAVIDSON and Merle R. Jenkins, Defendants,

and

Richard A. DAVIDSON, Counter-Plaintiff,

v.

UNITED STATES of America, Counter-Defendant.

No. G80–862.

United States District Court, W.D. Michigan, S.D.

Feb. 15, 1983.

Allen R. Mass, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., Robert C. Greene, Asst. U.S. Atty., Grand Rapids, Mich., for plaintiff.

Chris Parfitt, Jenkins, Nystrom & Strelacci, P.C., Southfield, Mich., for defendant.

## OPINION

ENSLEN, District Judge.

On March 20, 1978, a delegate of the Secretary of the Treasury made an assessment, pursuant to Section 6672 of the Internal Revenue Code of 1954, 26 U.S.C. § 6672, and gave notice of the assessment and demand for payment against Defendant Richard A. Davidson. The assessment, in the amount of $87,535.99, was based on a determination by the United States that David-

son was a person responsible for paying to the United States the withholding and Federal Insurance Contributions Act taxes of Davco, Inc. for the fourth quarter of 1972 and the third quarter of 1973, who had knowledge that these taxes had not been paid, and who knowingly failed to see that they were paid at a time when there were funds available to pay those taxes to the United States.

On December 2, 1980, the United States brought this action to reduce the assessment against Davidson to judgment, and to set aside a fraudulent conveyance of certain property by Davidson to Defendant Merle R. Jenkins.[1] Defendants Davidson and Jenkins answered the Complaint on February 13, 1981. The Answer contained a Counter Claim against the United States alleging that certain employees of the United States, notably the former and present United States Attorneys for this District, made unauthorized disclosures of financial information relating to Davidson. Presently, this matter is before the Court on Plaintiff's Motion for Partial Summary Judgment, filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. Summary Judgment

To warrant the grant of summary judgment, the moving party bears the burden of establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 147, 90 S.Ct. 1598, 1602, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device . . . Diapulse,* 527 F.2d 1008, 1011 (CA 6 1976); *Nunez v. Superior Oil Company,* 572 F.2d 1119 (CA 5 1978); *Tee-Pak, Inc. v. St. Regis Paper Company,* 491 F.2d 1193 (CA 6 1974). If no genuine issue as to any material fact is established, the moving party is entitled to judgment as a matter of law. *Chavez v. Noble Drilling Company,* 567 F.2d 287 (CA 5 1978); *Irwin v. United States,* 558 F.2d 249 (CA 5 1977).

In determining whether or not there are issues of fact requiring a trial, "the inferences to be drawn from the underlying facts contained in the (affidavits, attached exhibits, and depositions) must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corporation v. Storm King Corporation,* 303 F.2d 425 (CA 6 1962). Even if the basic facts are not disputed, summary judgment may be inappropriate when contradictory inferences may be drawn from them. *United States v. Diebold, supra; EEOC v. United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, Local 189,* 427 F.2d 1091, 1093 (CA 6 1970). In making this determination, the Court must make reference to the entire record and all well pleaded allegations are to be accepted as true. *Dayco Corporation v. Goodyear Tire and Rubber Company,* 523 F.2d 389 (CA 6 1975); *Holmes v. Insurance Company of North America,* 288 F.Supp. 325 (DC Mich.1968); *Mahler v. United States,* 196 F.Supp. 362 (DC Pa.1961). These guidelines will be adhered to as substantive issues of the motion are examined.

In response to Plaintiff's motion, Defendant Davidson submits that summary judgment is inappropriate in situations where, as here, the basic, evidentiary facts are undisputed but the conclusions which the Court may infer from those facts are in dispute. In light of the extraordinary remedy which summary judgment is, the Court recognizes that the instant motion does not entitle the Court to now summarily try issues of fact; rather, its function is limited to deciding whether there are any such issues to be tried. *United States v. Bosurgi,* 530 F.2d 1105 (CA 2 1976).

## II. Factual Background

Defendant Richard A. Davidson readily acknowledges that at all times he was the founder, president and sole shareholder of

---

1. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. §§ 7401 and 7403. Originally assigned to the Honorable Douglas W. Hillman, the case was reassigned to the Honorable Richard A. Enslen, pursuant to Resolution No. 5.

Davco, a road construction firm. The Davco Board of Directors consisted of Davidson; Merle Jenkins, his attorney; and L.A. Davidson, his father. All persons within the corporate structure of Davco reported to and took directions from Davidson.

As president of the road construction concern, Davidson directed all other employees, either through staff people or supervisors, as well as maintaining numerous other corporate responsibilities. For example, Davidson was involved in Davco's relationship and dealings with the various unions representing Davco's employees, and he had ultimate authority to hire and fire all employees. Davidson also arranged for the financing of Davco's operations, the purchase of its equipment, bidding for work, and directing the manner in which its jobs were to be performed. Likewise, he was responsible for negotiating the contracts Davco entered into, and he signed most of those contracts. In fact, no employee of Davco could sign a contract of significance without Davidson's approval. Davidson also admits that he was the only party to ever sign the corporate tax returns.

With regard to the Davco bank accounts, Davidson had signatory authority on all of them, and no one at Davco could sign a check for a significant amount absent Davidson's approval.[2] Of special significance to this motion, Davidson admits that "[b]etween October 1, 1972 and September 30, 1973 he made certain decisions regarding the payment of Davco's creditors." Finally, Davidson had undertaken to personally guarantee a number of Davco's corporate obligations.

With respect to Davco's dealings with the IRS after Davco fell behind on its taxes, it was Davidson who signed installment agreements and other documents in which Davco promised to pay the back taxes. Davidson, on behalf of Davco, had a series of meetings with an Officer of the Internal Revenue Service who was attempting to collect Davco's overdue employment taxes.

When it was later determined that an attorney was required to represent Davco in its relations with the IRS, Davidson signed the necessary power of attorney on behalf of Davco.

The above facts are undisputed. Additional facts will be elaborated as they become necessary to a resolution of this motion.

### III. The Applicable Law

In Count I, Plaintiff seeks to reduce to judgment certain outstanding tax assessments rendered against Defendant Richard A. Davidson, pursuant to 26 U.S.C. § 6672. Section 6672(a) of the Internal Revenue Code provides:

§ 6672. *Failure to collect and pay over tax, or attempt to evade or defeat tax.*

*(a) General rule.*—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

There exist two conditions precedent which must be satisfied before an individual can be held liable under this provision: (1) he must be the person responsible for the collection and payment of withholding taxes; and (2) he must willfully fail to collect and pay over said taxes. *Teele v. United States,* 529 F.2d 903, 905 (CA 9 1976); *Pacific National Insurance v. United States,* 422 F.2d 26, 29 (CA 9 1970); *Taubman v. United States,* 499 F.Supp. 1133, 1137 (ED Mich. 1978).

**2.** Indeed, when Davco began to run into financial difficulties, even checks of a relatively small amount had to be approved by Davidson.

**1052**

■ Section 6671(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 6671(b), defines the word "person" thusly:

> *(b) Person defined.*—The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

Certainly, pursuant to the above definition, responsibility for the collection and payment of withholding taxes can attach to corporate officers. However, such a result is not automatic. It is well established that the test for determining the responsibility of the corporate officer under § 6672 is essentially a functional one, focusing upon the degree of influence and control which the officer exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors. In *Monday v. United States,* 421 F.2d 1210, 1214–1215 (CA 7 1970), the Seventh Circuit Court of Appeals, defining the contours of the test, stated:

> Corporate office does not, *per se,* impose the duty to collect, account for and pay over the withheld taxes. On the other hand, an officer may have such a duty even though he is not the disbursing officer. Cf. *Bloom v. United States,* 272 F.2d 215 (9th Cir.1959), certiorari denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146. The existence of the same duty and concomitant liability in another official likewise has no effect on the taxpayer's responsibility. *Datlof v. United States,* 252 F.Supp. 11, 33 (E.D.Pa.1966), affirmed, 370 F.2d 655 (3d Cir.1966), certiorari denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624. Liability attaches to those with power and responsibility within the corporate structure for seeing that the taxes withheld from various sources are remitted to the Government. *Scott v. United States,* 354 F.2d 292, 296, 173 Ct.Cl. 650 (1965); see also *Gefen v. United States,* 400 F.2d 476, 482 (5th Cir.1968), certiorari denied, 393 U.S. 1119, 89 S.Ct. 990, 22 L.Ed.2d 123. This duty is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds. Cf. *e.g. Bloom v. United States,* 272 F.2d 215 (9th Cir. 1959), certiorari denied, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146; *Hewitt v. United States,* 377 F.2d 921, 924 (5th Cir. 1967); *Scott v. United States,* 354 F.2d 292, 173 Ct.Cl. 650 (1965); *Newsome v. United States,* 301 F.Supp. 757 (S.D.Texas 1968); see generally, 8A Mertens, Law of Federal Income Taxation, § 47A.25a, pp. 126–128 (1964).

*See also, Braden v. United States,* 442 F.2d 342 (CA 6 1971), *cert. den.,* 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971).

From the outset of this action, and in opposing the present Motion for Summary Judgment, Defendant Davidson has generally asserted two defenses to Count I: (1) that he was not a person responsible for the collection and payment of withholding and social security taxes during the relevant times; and (2) that he did not willfully fail to collect and pay over the taxes at issue. Accordingly, the Court will proceed to address the aforestated dual issues *seriatim.*

### A. Was Davidson a Responsible "Person"?

Among the specific facts which courts have relied upon in determining whether individuals are persons responsible for the payment of taxes withheld from the wages of employees are:

(1) The identity of the officers, directors and stockholders of the corporation and their duties;

(2) The ability to sign checks on behalf of the corporation;

(3) The identity of the individuals who hired and fired employees;

(4) The identity of the individuals who were in control of the financial affairs of the corporation; and

(5) The identity of those who had an entrepreneurial stake in the corporation.

*Braden v. United States,* 442 F.2d 342 (CA 6), *cert. den.,* 404 U.S. 912, 92 S.Ct. 229,

30 L.Ed.2d 185 (1971), *affirming,* 318 F.Supp. 1189 (SD Ohio 1970); *Datlof v. United States,* 252 F.Supp. 11, 33 (ED Pa), aff'd, 370 F.2d 655 (CA 3 1966), *cert. den.,* 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967); *United States v. Sotelo,* 436 U.S. 268, 279–280, nts. 12 & 13, 98 S.Ct. 1795, 1802–1803, nts. 12 & 13, 56 L.Ed.2d 275 (1978). Essentially, liability is predicated upon the existence of significant, as opposed to absolute, control of the corporation's finances.

While the government contends that Davidson had significant power and responsibility within the corporate structure for seeing that taxes withheld were paid to the government, Davidson contends that much of his decision making authority regarding Davco's affairs were assumed by a creditor of Davco, S.D. Solomon & Sons (Solomon). Solomon was a prime contractor specializing in road construction. According to Davidson, sometime in 1972 Solomon requested Davco to bid with Solomon on two construction jobs. Solomon, as the prime contractor, was to prepare the ground for paving, and Davco, as a subcontractor, was to put down the pavement. Solomon represented that it would assist Davco when necessary and would ensure that it, Solomon, would finish its work on schedule.

Davidson contends that Davco completed the first job, but that Solomon elected to do some other work before completing the second job. Davidson testified that during the entire 1972 pre-Labor Day construction season, Davco could not perform any work and, by the time it eventually began the second job, its credit rating began to deteriorate. At approximately this time, Solomon itself began to have financial difficulties and Edward "Otto" Solomon, one of the partners in S.D. Solomon & Sons, became concerned about Davco's ability to complete the job.

Solomon's concern arose from the fact that Davco found it increasingly necessary to rely upon Solomon's financial support. Davco needed Solomon to co-sign construction bonds necessary for Davco to work on other jobs, including jobs with which Solo-

mon was not even involved. Also, Solomon began to pay certain of Davco's bills. It is Davidson's contention that certain sums received by Solomon from contract owners which Solomon should have paid to Davco were used to pay some of Davco's creditors. Likewise, Davidson testified that Solomon paid nearly one million dollars of its funds to Davco's creditors in order to keep Davco financially afloat.

Davidson also testified that because of Davco's mounting financial difficulties, Solomon began, in the last quarter of 1972, to gradually insist upon more control over the disbursement of Davco's funds. At first, unpaid creditors of Davco began to approach the prime contractors on the jobs, which in many cases was S.D. Solomon & Sons. Solomon, realizing that it could be liable on its construction bond if Davco could not pay its suppliers, initially insisted that Davidson prefer several creditors which Solomon wished to be paid. Davidson was thereafter free to disburse Davco's remaining funds as he wished. According to Davidson, S.D. Solomon & Sons, through the person of Otto Solomon, eventually assumed "considerable control" over financial decisions concerning all of Davco's creditors.

According to Davidson, Otto Solomon exercised control by reviewing "unpaid lists," which were lists of unpaid creditors of Davco, prepared by a Davco employee. Initially, Otto Solomon's review of these lists was made on an irregular basis. However, at some later point the lists were taken to Otto Solomon by Davidson every few weeks. Davidson also delivered to Otto Solomon a list of "critical items," payments that Davidson determined were urgently needed to keep Davco in business. Davidson testified that taxes were included in both lists.

Solomon's control eventually evolved into regular meetings between Davidson and Otto Solomon. At these meetings, Otto Solomon reviewed the lists, crossed out those creditors he did not want paid, and added creditors he did want paid. Davidson then took the list back to Davco's bookkeep-

er, who then drew checks to the desired creditors. Significantly, Davidson acknowledges that in between his sessions with Solomon, even after Solomon acquired "considerable control," Davidson had the power to approve a payment that was critical, if he felt Solomon would approve of it. Neither Otto Solomon nor anyone outside the Davco organization ever had signatory authority over Davco's bank accounts.

Exhibits 21, 22, 23, 24 and 56 demonstrate that Davco had sufficient funds to make the weekly deposits to pay the taxes withheld from its employees' paychecks during the period from October 1, 1972 through December 31, 1972. The total withholding taxes for this period amounted to $51,015.36.[3] Those same exhibits also establish that Davco had sufficient funds to make the weekly deposits to pay the taxes withheld from its employees' paychecks from July 1, 1973 through September 30, 1973. The total withholding taxes for this period equalled $36,520.63.[4]

In his deposition, Davidson acknowledges that during the aforestated periods there were funds available to pay over to the United States the trust fund taxes. However, Davidson contends, by way of justification or excuse, that he did not pay those taxes because Otto Solomon did not give him permission to do so, and that if he did not follow Solomon's instructions, Solomon would put him out of business. Essentially, it is Davidson's argument that he was not responsible for payment of the taxes because Solomon took over "financial control of Davco, effectively ousting Davidson from his prior position of control." Davidson was afraid that Solomon would put Davco out of business unless Otto Solomon's instructions were followed. Neither party disputes that fact. Davidson, however, submits that the facts provide a defense in the instant action.

■ The law is clear that one is not absolved from responsibility to pay over the taxes withheld from the salaries of employ-

ees, even when creditors and others have the employer in a position to put it out of business. The case of *Kalb v. United States*, 505 F.2d 506 (CA 2 1974), *cert. den.*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975), is directly on point. The Herold Radio and Electronics Corporation, which had been withholding employment taxes from its employees, was faced with a serious cash flow problem. The bank which had been financing Herold threatened to withdraw its line of credit. In an attempt to placate the bank and continue to receive the necessary financing, Herold agreed to allow the bank to place a representative on its premises to oversee its financial operations. Notwithstanding this precaution, Herold finally went out of business leaving a sizeable portion of its employment taxes unpaid. The government made a 100% penalty assessment against two of Herold's officers, and during the course of the subsequent litigation, those officers raised the identical defense that Mr. Davidson has raised in this case. The United States Court of Appeals for the Second Circuit affirmed the District Court's directed verdict in favor of the United States on the issue of the corporate officers' responsibility to pay over the withheld taxes. In making that ruling the court stated that:

> To permit corporate officers to escape liability under section 6672 by entering into agreements which prefer other creditors to the government would defeat the entire purpose of the statute. As we have noted, and as section 7501(a) makes explicit, withholding taxes are held in trust. We cannot imagine that in any other context a trustee could avoid his obligations by entering into an agreement by which funds entrusted to him are used to pay his other obligations. Similarly, we will not permit appellants so to escape their obligations here. 505 F.2d at 510.

The *Kalb* case is like the instant matter in that a claimed creditor has allegedly prevented the defendant from paying with-

---

**3.** The parties have stipulated that the figures for the withholding taxes are correct.

**4.** *Id.*

holding taxes. An additional similarity is that both taxpayers allege that they had always sought the creditor's approval for payment of taxes, but the creditor had refused to approve such payments. In both cases, the creditor's power to select which creditors should be paid was granted as part of the consideration for keeping the business afloat. There, as here, the corporate officers maintained legal control of the business, including the power to sign checks.

The *Kalb* case was followed in *Taubman v. United States, supra.* In order to obtain the necessary capital to enter into a contract to build housing, Prebuilt Homes, Inc. obtained financing from INI. When Prebuilt was threatened with insolvency, INI insisted on the right to dictate to Prebuilt's officers the manner in which its funds could be disbursed, refused to advance funds sufficient to pay Prebuilt's withholding taxes, and would only fund its payroll needs on a "net payroll" basis. During the relevant period, INI was Prebuilt's only means of support, as Prebuilt was not generating any income and no other means of obtaining sufficient working capital were available. On those facts, which are strikingly similar to those of the case at bar, the court held that Prebuilt's officers were not absolved of responsibility. The court noted that the officers of Prebuilt, like Davidson, remained in legal control of the corporation and retained the actual power, by virtue of their signatory authority over the corporation's checking accounts, to make actual cash disbursements. The court stated that the officers' agreement to the arrangement in order to keep Prebuilt in business was irrelevant and not a defense to the action.

█ In the instant matter, Davidson also contends that Solomon paid some of Davco's bills directly out of Solomon's checking account, using funds owed to Davco by Solomon under its subcontract. This fact is not contested by the government. However, while Davidson's contention may im-

plicate Solomon as another responsible person, it does not absolve Davidson from any responsibility.[5] There is no dispute that Davidson had actual signatory power on Davco's checking accounts, in which there were sufficient funds to pay the taxes in question.

It is also uncontroverted that Revenue Officer Gerald Price of the Internal Revenue Service and Davidson met at Solomon's office, at which time Price and Davidson signed agreements in which Davco promised to pay its tax delinquency. The fact that Price may or may not have known that the funds were coming from Solomon to pay the taxes is of no moment to the instant matter. Officer Price's state of mind has no relevance to the issue of Davidson's responsibility. Davidson's claim that Revenue Officer Price met at Solomon's office because "Solomon's approval was needed for release of the funds to make payment under the agreement between Davco and the IRS," proves nothing. As established in Davidson's testimony, Solomon's alleged right to approve or disapprove the release of funds was granted to it as part of the consideration for keeping Davco in business. *See, Kalb v. United States, supra.* Again, Davidson's decision to give Solomon certain powers in order to induce it to keep Davco in business does not immunize Davidson from responsibility. *Cf. e.g. Braden v. United States,* 442 F.2d 342, 343 (CA 6), *cert. den.,* 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971); *Monday v. United States, supra; White v. United States,* 372 F.2d 513, 517 (Ct.Cl.1967).

Based upon the foregoing, the Court is persuaded that there exists no material question of fact as to whether Defendant Davidson was a person responsible for the collection and payment of withholding and social security taxes during the relevant times included in this action. For purposes of this motion, the sole issue remaining is whether Davidson had knowledge of the delinquency and failed to rectify it at a

---

**5.** Indeed, more than one person may be responsible. *White v. United States,* 372 F.2d 513 (Ct Cl 1967).

time when there were funds available to pay the United States.

B. *Did Davidson have knowledge of the tax delinquency and fail to rectify it when there were funds available to pay the United States?*

■ As set forth in *Kalb v. United States, supra,* and *Taubman v. United States, supra,* in order for Defendant Davidson to be held liable in this action it must not only be established that he was the person responsible for the collection and payment of withholding taxes, but it must also be shown that he willfully failed to collect and pay over those taxes. Generally, the word "willfully" does not require that the responsible person acted by virtue of a "bad motive or the specific intent to defraud the government or deprive it of revenue." *Sherman v. United States,* 490 F.Supp. 747, 754 (ED Mich 1980). Rather, it merely means that the responsible person "had knowledge of the tax delinquency and knowingly failed to rectify it, when there were available funds to pay the government." *Builders Finance Company v. United States,* 352 F.Supp. 491, 495 (ED Mich 1970), aff'd, sub nom, *Mueller v. Nixon,* 470 F.2d 1348 (CA 6 1972), cert. den., 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1001 (1973). In *Monday v. United States, supra,* the United States Court of Appeals for the Seventh Circuit held that the standard of willfulness under § 6672 could not be construed to include a lack of "reasonable cause" or "justifiable excuse," and approved the following jury instruction:

> You are instructed that for the plaintiff's and/or third-party defendant's failure to pay over the taxes withheld to have been willful it is not necessary that there have been present any intent to defraud or to deprive the United States of taxes; nor is it necessary that bad motives or wicked design be shown.
>
> An act is willful if it is voluntary, conscious, and intentional. If you find that plaintiff and/or third-party defendant knowingly used available funds to prefer other creditors over the United States then you must find that he acted willfully. 421 F.2d at 1216.

Davidson submits that he did not willfully fail to collect and pay over the taxes at issue. Rather, Defendant contends that Solomon forcibly took control of Davco, leaving Davidson powerless. Defendant in his brief in opposition to Plaintiff's Motion for Partial Summary Judgment, submits that the following facts demonstrate that he did not willfully fail to collect and pay over taxes:

> Davso (sic) subcontracted with S.D. Solomon & Sons on a state highway project to perform the paving portion of the contract. Davco's paving was to follow the performance by S.D. Solomon & Sons of preparing the subgrade for pavement. Because of scheduling difficulties, in part brought about by S.D. Solomon & Sons' decision to leave the project upon which Davco was a subcontractor and perform portions of another contract elsewhere, Solomon's preparation of the subgrade was delayed during much of the summer of 1972. Due to this delay, Davco was unable to perform its paving portion of the contract (although when Davco bid as a subcontractor to Solomon, defendant was promised by the principals of S.D. Solomon & Sons that Davco's performance of its subcontract would not be held up by S.D. Solomon & Sons's performance of the preparatory work). This promise was not fulfilled by S.D. Solomon & Sons, and Davco was soon in financial difficulty. Due to the lengthy time period in which it was unable to perform under the contract (and therefore unable to receive compensation under the contract) Davco was unable to maintain its payments due to its suppliers for the job, which was a breach of its subcontract with S.D. Solomon & Sons.
>
> Because of this default, Solomon, as general contractor, was in a position to withhold the contract funds due Davco from Solomon and apply them to the appropriate jobs in order to avoid claims by Davco's unsatisfied suppliers against S.D. Solomon & Sons as the general contractor and against its payment bond. It was a

result of this position that Solomon, through the actions of Otto Solomon refused to release contract funds to Davco. Rather, Solomon required Davidson to prepare a list of unsatisfied creditors of Davco and submit it to Otto Solomon. From this list of creditors, Davidson drew up a second list of "critical" creditors that he felt Otto should pay. Solomon, based solely upon his own decision, would review the list of suggested creditors to be paid with the withheld Davco funds due from Solomon on the highway project, would remove from that list those creditors that Solomon had no interest in satisfying (because they had no claim over against Solomon or his payment bond in the event they were not paid) and added to Davidson's suggested list additional creditors of Davco that had potential recourse against Solomon in the event of Davco's default. This list was then returned to Davidson with orders that these creditors be paid with the earmarked funds. Further, Solomon demanded follow-up proof that these payments were made to each designated creditor in order to ensure that his directions on which creditors to satisfy were carried out. Defendant's Brief in opposition to Motion for Partial Summary Judgment, pp. 6–7.

Notwithstanding the above, Davidson acknowledges that, as president of Davco, he was familiar with the company's obligation to withhold taxes from the wages of its employees. He knew what employment taxes were, and also knew that the trust fund taxes had to be paid about once a week. As previously discussed, Davidson also admits that he was aware of the tax liabilities of Davco for the fourth quarter of 1972 and the third quarter of 1973 at a time when Davco had sufficient funds to pay those liabilities. Likewise, he acknowledges that he failed to rectify those delinquencies.

■ Based upon the foregoing, the Court concludes that the "willfulness" requirement of § 6672 has been established as a matter of law. Relying upon facts which are not in dispute, Davidson contends that his failure to pay employment taxes was not "voluntary, conscious or intentional," because he was coerced not to do so by Solomon. This contention misapprehends the meaning of the word "willfully." Ordinarily, the terms "voluntary, conscious and intentional," as used by the courts, are employed to distinguish knowing conduct from "accidental" conduct. *Monday v. United States,* 421 F.2d at 1216; *Sherman v. United States,* 490 F.Supp. at 754. In view of Davidson's many admissions, his conduct in failing to pay the taxes can hardly be termed accidental.

Moreover, willfulness, which consists of conduct which a person knows might result in the "use of withheld employment taxes for other corporate purposes," does not require a showing of "malice or wrongful purpose." *Braden v. United States,* 442 F.2d at 344. For example, in *Kizzier v. United States,* 598 F.2d 1128, 1132 (CA 8 1979), the court stated that, "a responsible person acts willfully within the meaning of § 6672 if he acts in such a manner that he knows or intends that, as a consequence of his conduct, withheld employment taxes belonging to the government will not be paid over but will be used for other purposes." Similarly, in *Hornsby v. Internal Revenue Service,* 588 F.2d 952, 953 (CA 5 1979), the court observed that: "Willfulness is shown if the responsible person knows or is aware that the money owing to the government for unpaid withholding taxes is used for other corporate purposes."

In the instant matter, there is no dispute that Solomon did not have signatory authority over Davco's checking accounts, and that all checks had to be signed by Davidson himself or one of Davco's employees. It is also admitted that Davidson knew the employment taxes were not being paid, and that, instead, they were being used for other corporate purposes. Hence, Davidson's submission that he had no intention of avoiding payment of the taxes is legally insufficient.

Davidson's claim that he was coerced into following Solomon's instructions can, likewise, be disposed of in summary fashion. One is not absolved from the responsibility

**1058**

to pay over taxes withheld from the salaries of employees, even when creditors threaten to shut down an employer. In *Kalb v. United States, supra,* the threatening creditor was a bank who was about to withdraw its line of credit unless it was permitted to control the disbursement of plaintiff's corporation. In rejecting that argument, the United States Court of Appeals for the Second Circuit noted that plaintiff had "voluntarily entered into and at all times acceded to the arrangement." The instant matter is analogous in that Davidson's accession to the arrangement with Solomon was voluntary, as Davidson never relinquished the power to sign Davco's checks. Further, Davidson had the option, if he wished, to refuse to follow Solomon's instructions and, if need be, to terminate Davco's operations rather than to permit the use of trust funds for other corporate obligations. *See, e.g., United States v. Hill,* 368 F.2d 617, 621 (CA 5 1966); *Taubman v. United States, supra.*

Finally, Davidson's contention that Solomon's orders as to which creditors were to be satisfied out of the funds paid to Davco by Solomon indicates that there were no funds available to Davco, is meritless. The very instant that Solomon deposited funds into Davco's bank accounts, those funds became available to pay the taxes. *See, Sorenson v. United States,* 521 F.2d 325, 327 (CA 9 1975). Again, it is undisputed that Davco had funds available each week to pay over to the United States the trust fund taxes. I find, from the undisputed facts in this case, that there were funds available to pay Davco's tax delinquency at a time when Defendant Davidson was aware that the taxes had not been paid. Consequently, Davidson's conduct was "willful" within the meaning of 26 U.S.C. § 6672.

Accordingly, Plaintiff's Motion for Partial Summary Judgment, as to Count I, is granted; and I will enter an Order in accordance therewith this date.