**In re Alfredo Medina FERNANDEZ and Linda Medina, Debtors.**

**Alfredo Medina FERNANDEZ and Linda Medina, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. GG89–01239.
Adv. P. No. 89–0330.**

United States Bankruptcy Court, W.D. Michigan.

Aug. 14, 1991.

William R. Farley, for plaintiffs Alfredo Medina Fernandez and Linda Medina.

Mark D. Lansing, for defendant U.S.

## OPINION

JAMES D. GREGG, Bankruptcy Judge.

### I. ISSUES

The cross motions for summary judgment in this adversary proceeding raise three issues involving the liability of the Debtors for failure to account for and pay over various taxes to the government. First, whether the Debtors are each responsible persons, within the meaning of 26 U.S.C. § 6672 (hereinafter "I.R.C."), who were required, and willfully failed, to collect, account for, and pay to the government withheld income and FICA taxes due for the second, third and fourth quarters of 1984, and the first quarter of 1985. Second, if the Debtors are liable for failure to withhold, whether these taxes are dischargeable pursuant to 11 U.S.C. § 523(a)(7). Third, whether the Debtors, federal income tax liability for the year 1985 is dischargeable pursuant to 11 U.S.C. §§ 523(a)(7) & 507(a)(7).

### II. PROCEDURAL BACKGROUND

The Plaintiffs, Alfredo Medina Fernandez (hereinafter "Fernandez") and Linda Medina (hereinafter "Medina") sometimes collectively referred to as the "Debtors," filed a voluntary petition for relief under chapter seven of the Bankruptcy Code on April 4, 1989. This adversary proceeding was filed on October 2, 1989, against the United States of America (hereinafter "Internal Revenue Service," "I.R.S.," or "government") to determine whether certain federal taxes are dischargeable.

The Debtors assert that the I.R.S. has wrongfully made an assessment against them for failure to withhold income taxes and social security taxes which were to be withheld by Medina Construction Co., Inc. during 1984 and 1985. This type of assessment is commonly termed a "100 percent penalty" for failure to withhold "trust fund taxes." [1] Although the Debtors admit they are the incorporators of Medina Construction Co. (hereinafter "Medina Construction"), they deny any liability for the trust fund taxes. In the alternative, they assert even if they are liable for failure to withhold, the taxes are dischargeable as a penalty pursuant to 11 U.S.C. § 523(a)(7). Also, the Debtors claim that personal federal income tax assessments for the year 1985 are dischargeable pursuant to 11 U.S.C. §§ 523(a)(7) & 507(a)(7).[2]

In response, the I.R.S. contends the assessments are valid and are nondischargeable as taxes pursuant to 11 U.S.C. § 523(a)(1). Also, the I.R.S. asserts the federal income tax is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(1) & 507(a)(7).

The court has jurisdiction over this adversary proceeding. 28 U.S.C. § 1334. This matter is a core proceeding and the court has the authority to enter a final order or judgement. 28 U.S.C. §§ 157(b)(1) & 157(b)(2)(B) & (I). The parties have filed cross-motions for summary judgement and each contend they are entitled to judgment as a matter of law.

### III. FACTS

The Debtors are married and started their business, Medina Construction Company, in 1983 as a sole proprietorship.[3] The purpose of the company was to perform cement work as a minority subcontractor for state funded projects. In March, 1984, the company incorporated by filing Articles of Incorporation with the Michigan Department of Commerce. Both Debtors signed the articles as incorporators. After filing the articles, Medina Construction was informally operated and did not conform to corporate formalities. The corporation did not issue shares of stock, hold director or shareholder meetings, or appoint officers.

Fernandez acted as President of the corporation. His duties included bidding prices on contracts, executing contracts, paying creditors and employees, and hiring and firing employees. He also worked as a foreman or laborer on projects in the field. Although Medina was an incorporator of the business, her role was much less defined. Her duties were more secretarial or clerical in nature. She was responsible for issuing and signing checks when Fernandez was not in the office, determining employee payroll including calculating withholding taxes, certifying wages for the prime contractor, and communicating with the company accountant. She signed certified wage forms as the "Secretary/Treasurer" of Medina Construction.

In April, 1983, the Debtors opened a checking account with Michigan National Bank on behalf of Medina Construction. Both Fernandez and Medina were listed as signatories on the checking account. Only one of their signatures was necessary to issue a check. The majority of checks is-

---

**1.** Withholding taxes are part of an employee's wages to be held by the employer in trust for the government. I.R.C. §§ 3102, 3402(a), 7501. "Trust fund taxes" are held by the employer for exclusive use of the government and may not be used for any other business purpose including payment of salaries. *Gephart v. United States,* 818 F.2d 469, 472 (6th Cir.1987) (citing *McGlothin v. United States,* 720 F.2d 6, 8 (6th Cir.1983)). The "100 percent penalty" involves the personal liability of responsible persons who willfully fail to account for and pay over trust fund taxes to the government. *See* I.R.C. § 6672(a).

**2.** The Debtors' complaint also asserts that Federal Unemployment Tax Act ("FUTA") taxes assessed by the I.R.S. for the years 1983 and 1984 are dischargeable pursuant to 11 U.S.C. §§ 523(a)(7), 524 & 507(a)(7). The I.R.S. admits the FUTA taxes in dispute are dischargeable pursuant to 11 U.S.C. §§ 523(a)(1) & 507(a)(7)(D). *See* United States Supplemental Brief in Support of Motion for Summary Judgment at n. 2. Consequently, the issue is not before the court at this time.

**3.** At oral argument and in their brief, the I.R.S. admits the trust fund taxes accumulated during Medina Construction's existence as a sole proprietorship are dischargeable. This issue is not before the court.

sued by Medina Construction were issued and signed solely by Medina. This account was Medina Construction's only checking account when it operated as a sole proprietorship and as a corporation. The Debtors made nearly all payments necessary for the business through this account including paying employee wages. Both Debtors made withdrawals and deposits of corporate funds on this account.

During most of its existence, Medina Construction was a subcontractor for Muskegon Asphalt Paving Company (hereinafter "Muskegon Asphalt"). In order to pay its employee's wages, Medina Construction sent certified wage forms to Muskegon Asphalt who then advanced a single check for the wages. Medina Construction deposited the check in the corporate checking account and then issued separate, individual checks to its employees for salaries.

Nearly from its inception, Medina Construction failed to remit its payroll taxes to the government. Both Debtors were aware of the delinquent taxes. Fernandez signed nearly all of Medina Construction's payroll tax returns (Form 941). The company's accountant taught Medina how to calculate withholding taxes and informed her the procedure for paying the taxes. Yet, neither Debtor paid the taxes.

During the period the taxes were not being paid, the Debtors continued to sign and issue checks on behalf of Medina Construction to pay other creditors, including suppliers and employee wages. The Debtors continued to pay net payroll each week and neglected paying withholding taxes. The main reason the Debtors paid other creditors rather than the government was to continue the corporation's business operations.

On August 11, 1986, the I.R.S. assessed a 100 percent penalty against the Debtors in the amount of $37,108.50. In addition, the Debtors were assessed tax liabilities for failure to pay over federal income taxes.

## IV. DISCUSSION

### A. *Standards to Grant or Deny Motion for Summary Judgment*

■ In considering the cross motions for summary judgment, this court is guided by the standards set forth by Judge Gibson in *FMB–First Michigan Bank v. Van Rhee,* 681 F.Supp. 1264, 1266 (W.D.Mich.1987), wherein it is stated:

Summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc.,* 668 F.2d 905, 908 (6th Cir.1982), *see Willetts v. Ford Motor Co.,* 583 F.2d 852, 854 (6th Cir. 1978); *Felix v. Young,* 536 F.2d 1126, 1130 (6th Cir.1976). The function of a motion for summary judgment is not to allow the court to decide issues of fact but rather to determine whether there is an issue of fact to be tried. *United States v. Articles of Device, Etc.,* 527 F.2d 1008, 1011 (6th Cir.1976); *Aetna Ins. Co. v. Cooper Wells & Co.,* 234 F.2d 342, 345 (6th Cir.1956). The moving party bears the burden of clearly establishing the nonexistence of any genuine issue of fact material to a judgment in his favor. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Articles,* 527 F.2d at 1011. In determining whether there are genuine issues of fact warranting a trial, the evidence will be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir.1962). If a disputed question of material fact remains, the motion for summary judgment must be denied. *Atlas,* 668 F.2d at 908; *Felix,* 536 F.2d at 1030; *Bohn,* 303 F.2d at 427.

The court must examine all facts established by the record before it and conclude that no genuine issue of material fact exists before granting summary judgment.

### B. *Liability for Trust Fund Taxes*

■ Sections 3102 and 3402(a) of the Internal Revenue Code require employers to withhold social security and income taxes

from employee wages. These taxes are held in trust by the employer for the government. I.R.C. § 7501; *Slodov v. United States*, 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978). The 100 percent penalty imposes personal liability on individuals for unpaid taxes withheld from employee earnings under I.R.C. § 6672(a). The section provides, in pertinent part:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over....

I.R.C. § 6672(a).

Courts have developed a two-part test for determining personal liability under I.R.C. § 6672. First, the individual must be a "responsible person" pursuant to the statute. Second, the individual must "willfully" fail to pay over to the government the tax liability due. *Gephart v. United States*, 818 F.2d 469, 473 (6th Cir.1987); *Collins v. United States*, 848 F.2d 740, 742 (6th Cir.1988); *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986); *Mueller v. Nixon*, 470 F.2d 1348, 1350 (6th Cir.1972), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1001 (1973); *United States v. Davidson*, 558 F.Supp. 1048, 1051 (W.D.Mich.1983); *In re Premo*, 116 B.R. 515, 524 (Bkrtcy.E.D.Mich.1990).

In *Gephart*, the Sixth Circuit stated the test for determining whether an individual is a responsible person under section 6672:

It is well established that the test for determining the responsibility of a person under § 6672 is essentially a functional one, focusing upon the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors. *United States v.*

*Davidson*, 558 F.Supp. 1048, 1052 (W.D.Mich.1983). Section 6671(b) of the Internal Revenue Code ... defines the word "person" to include "an officer or employee of a corporation ... who as such officer or employee ... is under a duty to perform the act in respect of which the violation occurs."

Among the specific facts which courts have relied upon in determining whether individuals were persons responsible for the payment of taxes withheld from the wages of employees are: (1) the duties of the officer as outlined by the corporate by-laws; (2) the ability of the individual to sign checks of the corporation; (3) the identity of the officers, directors, and shareholders of the corporation; (4) the identity of the individual who hired and fired employees; (5) the identity of the individuals who were in control of the financial affairs of the corporation. *Braden v. United States*, 318 F.Supp. 1189, 1194 (S.D.Ohio 1970), *aff'd*, 442 F.2d 342 (6th Cir.), *cert. denied*, 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971).

818 F.2d at 473.

■ Personal liability under section 6672 is based on an individual's significant, as opposed to absolute, control of corporate finances. The responsibility is a matter of status, duty, and authority, and it is not essential for the person to have the final word on which creditors should be paid. It is only essential for the individual to have *significant* control over disbursement of funds. *Gephart*, 818 F.2d at 473.

■ The second part of the test under section 6672 is "willful" conduct. A responsible person "willfully" fails to pay over trust fund taxes to the government when the individual makes a deliberate choice to voluntarily, consciously, and intentionally pay other creditors rather than pay the taxes. *Collins*, 848 F.2d at 742; *Calderone*, 799 F.2d at 260. Many Sixth Circuit decisions hold that willfulness exists when a responsible person has knowledge of a tax delinquency and knowingly fails to make a payment to the government when there are available funds. *Calderone*, 799 F.2d at 259; *Gephart*, 818 F.2d at

475; *Davidson,* 558 F.Supp. at 1056. Evil motive or bad purpose is not essential to establish "willfulness" under section 6672. *Calderone,* 799 F.2d at 259.

### 1. Alfredo Medina Fernandez

#### a. *Responsible Person*

In determining whether Fernandez is personally liable for failure to pay over the trust fund taxes, the court must first determine if he is a "responsible person" under the statute. This is accomplished by applying the five factors to determine if Fernandez had significant control over Medina Construction's financial affairs and disbursement of funds. *See Gephart,* 818 F.2d at 473.

Since Medina Construction did not have corporate by-laws, Fernandez's duties were not formally expressed. The lack of by-laws does not prohibit the court from considering other evidence to determine Fernandez's corporate duties.[4]

The evidence is clear that Fernandez had the ability and authority to issue checks on behalf of Medina Construction. His name and signature appear on Michigan National Bank's signature card authorizing him to sign checks on behalf of the corporation. Fernandez signed and issued numerous Medina Construction checks to creditors, suppliers and employees. Additionally, Fernandez acknowledges in his deposition that he signed and issued checks for Medina Construction.

Although corporate formalities were not followed during Medina Construction's existence, it is apparent Fernandez was an owner and corporate officer of Medina Construction. Fernandez signed the 941 tax forms submitted to the government as "owner" of Medina Construction. In an interview with representatives of the I.R.S.

regarding the 100 percent penalty, he listed himself as "President, Vice President, and Treasurer" of the corporation. He admits in his deposition that he was "president" of Medina Construction. Additionally, the Articles of Incorporation identify Fernandez as an "incorporator" of Medina Construction.

Fernandez's duties included the hiring and firing of employees. Both Debtors admit in their depositions Fernandez hired and fired employees for Medina Construction. Also, in the interview with the I.R.S. regarding liability for the 100 percent penalty, Fernandez listed hiring and firing as one of his responsibilities.

There exists uncontradicted evidence Fernandez exercised significant control over the financial affairs of the corporation. Fernandez signed nearly all of the 941 tax forms. He signed some of the certified employee wage forms. In the interview with the I.R.S. regarding liability for 100 percent penalty, he claimed to have "ran total control of corporation." Fernandez bid prices on contracts and signed contracts on behalf of Medina Construction. His deposition testimony admits he had authority and ability to make payments to creditors, including employees and suppliers. Fernandez attempted to get a loan for Medina Construction on two occasions to payoff taxes and to start the corporation. He received payments on behalf of Medina Construction and deposited these moneys into the business checking account.

The evidence is clear that Fernandez is a "responsible person" pursuant to I.R.C. § 6672. He had significant, if not absolute, control over the financial affairs of Medina Construction, including disbursement of funds and priority of payments to creditors. His authority and actions satisfy the five factors set forth in *Gephart.*

---

**4.** The evidence before the court consists of both parties pleadings and the exhibits attached thereto, depositions of both Debtors authorized by this court, and a deposition of Michael P. Braden, a former accountant employed by Medina Construction, also authorized by this court.

The Debtors have attempted to place before the court a deposition of Mr. Fred Erpenbach taken January 27, 1986 in a state court action

between Medina Construction and another party. *See* Debtors' Memorandum of Law Regarding Motions for Summary Judgment at 5–9. Since this deposition was not taken in connection with this adversary proceeding, it is hearsay not within any exception. Therefore, the purported evidence will not be considered by this court in determining the liability of the parties. *See* FED.R.EVID. 801–804.

b. *Willful Conduct*

■ Even though Fernandez is a responsible person, he is not personally liable for failure to pay over trust fund taxes unless he acted willfully. His actions are willful if he made a deliberate choice to voluntarily, consciously, and intentionally pay other creditors rather than the government. *Collins*, 848 F.2d at 742; *Calderone*, 799 F.2d at 260.

Fernandez willfully failed to pay over the trust fund taxes to the government. He admits throughout his deposition he knew the amount of taxes to be withheld yet continually failed to pay them. In order to continue to operate the corporation's business, he paid other creditors instead of the I.R.S.. Fernandez certified payroll knowing the required taxes would not be paid. Although he continued to receive checks and deposits from the general contractor, he never used these funds to pay delinquent taxes. Additionally, Fernandez attempted to get a loan from Michigan National Bank to pay off his taxes but was unsuccessful. The facts clearly indicate Fernandez made a deliberate choice to voluntarily, consciously, and intentionally pay other creditors rather than the government.

The Debtors argue that their conduct was not willful because of the relationship Medina Construction had with its general contractor, Muskegon Asphalt. Medina Construction was in financial difficulty nearly from its beginning. To assure payment of its subcontractor's suppliers, Muskegon Asphalt issued joint checks to Medina Construction and the supplier. Both Medina Construction and the supplier would endorse the check, then the Debtors would deposit it and issue its own check to the supplier. Muskegon Asphalt also was responsible for advancing payroll to Medina Construction. The Debtors certified the payroll, sent it to Muskegon Asphalt who would then issue a check to Medina Construction for the payroll. The Debtors deposited this payroll check into the corporate account then issued separate checks to its employees. The Debtors argue that since Muskegon Asphalt only advanced net payroll to Medina Construction, the Debtors had no control over these funds and their conduct could not be willful.

In *United States v. Davidson*, 558 F.Supp. 1048 (W.D.Mich.1983), Judge Enslen was confronted with a similar argument and held that the subcontractor was liable under section 6672 for a number of reasons. First, a subcontractor is not absolved from paying trust fund taxes even when the general contractor is in a position to put it out of business. Second, more than one person may be responsible for trust fund taxes, therefore, the fact that the general contractor may be another responsible person, does not absolve the subcontractor. Third, the very instance that funds are deposited into a corporation's account, those funds are available to pay trust fund taxes. *Davidson*, 558 F.Supp. at 1054–58.

This court agrees with the reasoning in *Davidson* and rejects the Debtors' argument. The fact that Muskegon Asphalt insisted upon issuing joint checks to Medina Construction and its suppliers is not persuasive regarding the *Debtors'* liability in this case. As in *Davidson*, this may be an indication that Muskegon Asphalt is also a responsible person but it has no effect on whether the Debtors' conduct violated section 6672. Also, the Debtors' claim that they continued to fail to pay the taxes for fear of going out of business is no excuse. Additionally, the Debtors admit to depositing Muskegon Asphalt's advances for employee wages directly into the business checking account. Regardless of whether the advance was net payroll or gross payroll, the instance these funds were deposited, the Debtors controlled the funds and they became available to pay the trust fund taxes. After the Debtors controlled the funds, any failure to pay trust fund taxes or prefer other creditors over the government was willful as voluntary, conscious, and intentional conduct. *See Calderone*, 799 F.2d at 260; *Collins*, 848 F.2d at 742; *Gephart*, 818 F.2d at 475; *Davidson*, 558 F.Supp. at 1056.

Even taking the Debtors' argument as correct, it is no excuse that the money was

paid to other creditors to keep the corporation operating. "[T]he government cannot be made an unwilling partner in a floundering business." *Collins*, 848 F.2d at 742. Because Fernandez is a responsible person who willfully failed to collect, account, and pay over trust fund taxes, the court finds that he is liable to the government for these taxes.

**2. Linda Medina**

**a. *Responsible Person***

■ Since Medina's role in Medina Construction was less defined, determining whether she is a responsible person who willfully failed to pay trust fund taxes to the government is more difficult. The five factors must again be considered to determine whether Medina is a responsible person with significant control over the financial affairs of Medina Construction, including the disbursement of funds and priority of payments. *See Gephart*, 818 F.2d at 473.

As with Fernandez, the lack of corporate by-laws for Medina Construction does not preclude the court from analyzing Medina's actions to determine her corporate duties. Medina was authorized to sign and issue checks on behalf of the corporation. This is shown by the signature card signed by Medina authorizing her to sign checks on the corporate account. In fact, the majority of checks issued by Medina Construction were signed by Medina. Also, there are numerous admissions in both Debtors' depositions stating Medina signed and issued checks on behalf of the corporation. These checks included payments to creditors, suppliers, employee salaries, and, on at least one occasion, a check to the I.R.S. for payroll withholding taxes.

In addition to Medina's check writing authority, it is obvious she was considered an officer and owner of Medina Construction. Medina signed certified wage forms to the general contractor as "Secretary/Treasurer" of the corporation. She signed the Articles of Incorporation as an "incorporator" of Medina Construction. Also, there is some evidence that, on at least one occasion, Medina exercised authority to fire an employee.[5] The record demonstrates Medina was an owner and officer of Medina Construction and acted in conformity with such a status.

Although Medina did not have absolute control over the financial affairs of the corporation, she did have *significant* control over the disbursement of funds and priority of payments to creditors. Throughout both Debtor's depositions and the exhibits before the court, there are admissions Medina signed and issued the majority of checks for Medina Construction.[6] These checks were to creditors, suppliers, employee wages, and even the I.R.S.. Medina concedes she was responsible for payroll which included the calculation of withholding taxes. She calculated and signed the certified wage forms to the prime contractor. There is deposition testimony and other evidence Medina signed on a loan to benefit the corporation.[7] She deposited and withdrew money on behalf of the corporation. Additionally, the accountant's deposition testimony establishes Medina as his sole contact with Medina Construction regarding withholding taxes. He taught Medina how to make the payroll withholding calculations and informed her the procedure necessary for paying the taxes.

---

**5.** The company accountant, Michael P. Braden, in deposition testimony claimed Medina informed him of Medina Construction's decision to terminate his services.

**6.** Exhibit L of the I.R.S.' Memorandum of Law in Support of Motion for Summary Judgment contains copies of a multitude of checks issued by Medina Construction. Out of 125 checks issued by the corporation, Medina's signature appears on 98 of the checks. Based upon this exhibit, Medina signed and issued over 75 per-

cent of the checks issued by Medina Construction.

**7.** *See* Exhibit N of the I.R.S.' Memorandum of Law in Support of Motion for Summary Judgment. The exhibit is a copy of loan documents signed by both Debtors as co-borrowers with Finance America of Grand Rapids, Michigan. Fernandez's deposition testimony is that his wife participated in obtaining the loan. In Medina's deposition she admits the Finance America loan was a "business loan."

The Debtors argue Medina did not have control over the financial affairs of the corporation because of their husband-wife relationship and ethnic background. The Debtors claim that although Medina signed and issued checks, she only acted on what Fernandez told her to do. It is argued Medina was completely domineered by Fernandez and did nothing for the corporation without his approval.[8]

Considering the evidence before the court, this argument is not compelling. The most apparent fact to rebut the Debtors' argument is the numerous checks signed and issued by Medina. She issued more than 75 percent of Medina Construction's checks. It is difficult to believe Medina received approval from Fernandez for all these checks. This is especially evident considering Fernandez was working in the field as a foreman or laborer the majority of the time.[9] Additionally, in his deposition, Fernandez admits Medina did not receive approval for all the checks she issued. When she did not receive approval, Medina determined which creditors were to be paid and issued checks under her own authority as an officer or owner of the corporation.[10]

■■■ The evidence is clear Medina is a responsible person pursuant to I.R.C. § 6672. Although she did not have abso-lute control over the financial affairs of Medina Construction, she did exercise significant control over the disbursement of funds and priority of payments to creditors. Her actions satisfy the five factors set forth in *Gephart*.[11]

#### b. *Willful Conduct*

■■■ Medina is not liable for failure to withhold taxes unless her actions were willful. The court must decide whether Medina's failure to pay the taxes rather than other creditors was voluntary, conscious, and intentional. *See Collins*, 848 F.2d at 742; *Calderone*, 799 F.2d at 260.

It is evident to this court Medina's actions were willful. She knew Medina Construction was paying net wages and not withholding taxes for the trust fund. Notwithstanding this knowledge, she continued to issue checks to creditors and employees while knowing there were tax deficiencies. Although the Debtors continued to receive checks and deposits from their general contractor, they never used these funds to pay delinquent taxes. Medina was responsible for determining the withholding taxes and knew the procedure for paying them. She certified payroll knowing the taxes would

---

8. The Debtors argue the court should follow the reasoning set forth in *Barrett v. United States*, 580 F.2d 449, 217 Ct.Cl. 617 (1978). Since *Barrett* is a Court of Claims decision, it only has persuasive authority to this court. Nevertheless, the case before this court is factually distinguished from *Barrett*. Although Medina may have been somewhat dominated by Fernandez, it does not rise to the level of domination of the plaintiff in *Barrett*. The evidence indicates Medina made important decisions regarding disbursement of funds and priority of payments for Medina Construction without Fernandez's approval. *Barrett*'s facts are not the same.

9. Both Debtors testified in their depositions that Fernandez worked in the field on projects for long periods. Fernandez would be away from the office from morning to night sometimes in the field for twelve hours a day. Medina's main responsibilities involved working in the office. Consequently, whenever Fernandez was working in the field, Medina was left to issue checks to creditors and employees by herself.

10. Check writing authority is only one of the factors to be considered by the court to determine whether Medina is a responsible person under the statute. *Gephart*, 818 F.2d at 474. Another important factor is the ability of an individual to determine which creditors are to be paid. Additionally, the issuing of small checks without approval demonstrates the individual's authority to pay or an "effective power to pay." *Gephart*, 818 F.2d at 474–75; *Calderone*, 799 F.2d at 261. All these factors indicate an individual has significant control over a corporation's financial affairs.

11. It is also important to note courts have concluded that more than one individual may be a "responsible person" under the statute. *See Gephart*, 818 F.2d at 473; *Premo*, 116 B.R. at 524 n. 20. The fact that another individual has greater authority or more responsibility is irrelevant. *Gephart*, 818 F.2d at 476. "Section 6672 does not confine liability for the unpaid taxes only to the single officer with the greatest or the closest control or authority over corporate affairs." *Id.* Therefore, Medina's liability is determined on its own facts regardless of Fernandez's liability for the trust fund taxes.

not be paid.[12]

Medina's actions constitute a deliberate choice to voluntarily, consciously, and intentionally pay other creditors rather than the government. Therefore, this court finds that Medina is liable under I.R.C. § 6672 as a responsible person who willfully failed to collect and pay over to the government trust fund taxes.

### C. *Dischargeability of Trust Fund Taxes*

 The Debtors claim the 100 percent penalty for failure to pay trust fund taxes is dischargeable as a penalty pursuant to 11 U.S.C. § 523(a)(7). In response, the I.R.S. argues the 100 percent penalty is nondischargeable as a tax pursuant to 11 U.S.C. § 523(a)(1)(A). The determination of this issue depends on whether the 100 percent penalty is considered a penalty or a tax.

The Supreme Court addressed the issue under the Bankruptcy Act in *United States v. Sotelo*, 436 U.S. 268, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978). In *Sotelo*, the Court held the 100 percent penalty is nondischargeable as a tax. The Court analyzed the statutory language and legislative history of the Bankruptcy Act in determining the 100 percent penalty is "unquestionably" a tax, regardless of its title as a "penalty." *Sotelo*, 436 U.S. at 275, 98 S.Ct. at 1800.

·The *Sotelo* holding is still a correct statement of law under the Bankruptcy Code. 11 U.S.C. § 523(a)(1)(A) provides, in pertinent part:

> A discharge under ... this title does not discharge an individual debtor from any debt—
>> (1) for a tax or a customs duty—
>> (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title whether or not a claim for such tax was filed or allowed
> . . .

Section 507(a)(7)(C) covers taxes the debtor is required to withhold or collect in any capacity. Trust fund taxes are included in this category of taxes. The category includes responsible persons who willfully fail to withhold payroll taxes under I.R.C. § 6672. 3 COLLIER ON BANKRUPTCY ¶ 523.06[6] (15th ed. 1991).

The law regarding the dischargeability of 100 percent penalty is unambiguous. Since the 100 percent penalty is considered a tax rather than a penalty, the court finds that the Debtors liability to the government for trust fund taxes is nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(A).

### D. *Dischargeability of Federal Income Taxes*

 Federal income taxes are nondischargeable if the tax return was due to be filed within three years before the filing of a bankruptcy petition. 11 U.S.C. §§ 523(a)(1) & 507(a)(7)(A)(i). The Debtors' 1985 federal income tax return was due to be filed on April 15, 1986. The bankruptcy petition was filed on April 4, 1989. Because the 1985 income tax return was due within three years before the bankruptcy petition was filed, the court finds the taxes are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(1) & 507(a)(7)(A)(i).

### E. *Pre-petition Interest*

It is well established that if the underlying tax obligation is nondischargeable, the pre-petition interest on the tax is also nondischargeable. *See Matter of Larson*, 862 F.2d 112, 118–19 (7th Cir.1988); *Matter of Keller & Katkowsky, P.C.*, 55 B.R. 155, 157 (Bkrtcy.E.D.Mich.1985); 3 COLLIER ON BANKRUPTCY ¶ 523.06[12] (15th ed. 1991). This court finds the pre-petition interest on all nondischargeable tax liabilities of the Debtors is also nondischargeable.

### V. CONCLUSION

Based on the analysis above, this court holds:

---

**12.** The Debtors make the argument that Medina could not have acted willfully because she was domineered by her husband. For the same reasons stated earlier, this argument again is not compelling. Also, it is generally held that an individual who follows the directions of a superior not to pay withholding taxes, does so at his or her own peril. *See Gephart*, 818 F.2d at 475.

1. Alfredo Medina Fernandez is a responsible person who willfully failed to account for and pay over to the government trust fund taxes pursuant to I.R.C. § 6672. Therefore, Alfredo Medina Fernandez is liable to the government for trust fund taxes for the second, third, and fourth quarters of 1984, and the first quarter of 1985.

2. Linda Medina is a responsible person who willfully failed to account for and pay over to the government trust fund taxes pursuant to I.R.C. § 6672. Therefore, Linda Medina is liable to the government for trust fund taxes for the second, third, and fourth quarters of 1984, and the first quarter of 1985.

3. The Debtors' liability for the trust fund taxes is nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(A).

4. The Debtors' liability to the government for federal income taxes for the year 1985 is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(1) & 507(a)(7)(A)(i).

5. Pre-petition interest on the taxes is nondischargeable.

6. There are genuine issues of material facts regarding the *amount* of liability for all taxes analyzed in this opinion. Therefore, the court makes no determination at this time as to the specific amounts of taxes the Debtors are liable to the government for.

Partial summary judgment is granted to the Defendant United States of America respecting liability and dischargeability of the taxes assessed against the Plaintiffs. The Plaintiffs' cross motion for summary judgment is denied respecting liability and dischargeability of the taxes. Since genuine issues of material fact exist with regard to the amount of the Plaintiff's tax liability, the scheduled trial will take place regarding the amount of tax liability. An order shall be entered accordingly.